THE STATE OF OHIO, APPELLEE, *v*. SMITH, APPELLANT.

[Cite as *State v. Smith,* 136 Ohio St.3d 1, 2013-Ohio-1698.]

*Criminal law—R.C. 2919.27(A)(2)—Violation of protection order—R.C. 2903.214(F)(1)—State must establish that defendant was served with order before the alleged violation of the order.*

(No. 2012-0239—Submitted January 23, 2013—Decided April 30, 2013.)

APPEAL from the Court of Appeals for Franklin County,

No. 11AP-512, 2011-Ohio-6730.

_____

SYLLABUS OF THE COURT

To sustain a conviction for a violation of a protection order pursuant to R.C. 2919.27(A)(2), the state must establish, beyond a reasonable doubt, that it served the defendant with the order before the alleged violation. (R.C. 2903.214(F)(1), construed.)

_____

KENNEDY, J.

{¶ 1} In this appeal, we are asked to determine whether in prosecuting the crime of violating a civil stalking or sexually-oriented-offense protection order ("SSOOPO") under R.C. 2919.27(A)(2), the state must prove that the order was delivered as required by R.C. 2903.214(F)(1) before the alleged offense occurred. For the reasons that follow, we conclude that to sustain such a conviction, the state must establish, beyond a reasonable doubt, that it served the defendant with the order before the alleged violation. Accordingly, we reverse the judgment of the court of appeals.

I. Facts and Procedural History

{¶ 2} Shasta Pickens and appellant, Robert L. Smith Jr., began dating in 2009. The two did not live together. Pickens lived at 879 Camden Avenue,

Columbus, Ohio, and Smith lived with his mother. Smith was not on the lease at the Camden address and did not have a key.

**{¶ 3}** Pickens described her relationship with Smith as "rocky" and marked with "altercations." She terminated the relationship in early 2010. On April 12, 2010, Pickens filed a petition in the Franklin County Court of Common Pleas, pursuant to R.C. 2903.214,[1] for an ex parte SSOOPO against Smith.

**{¶ 4}** The court granted the petition that day, set a mandatory full hearing date, and, pursuant to Sup.R. 10.03, issued Form 10.03-E, an ex parte SSOOPO.[2] The SSOOPO ordered Smith "not [to] be present within 500 feet" of Pickens "wherever [she] may be found, or any place [Smith] knows or should know [Pickens is] likely to be."

**{¶ 5}** On the day the court issued the SSOOPO, the Franklin County Clerk of Courts issued an order to serve Smith. The clerk's order required the Franklin County Sheriff to serve a certified copy of the SSOOPO and to make a return of service reporting either personal service on Smith or a failure of service of the order. Pickens testified that after obtaining the SSOOPO, she showed Smith a copy of it and told him that he was not allowed to be around her. She believed that that event had occurred on April 16, 2010. At that point, the sheriff had not yet served Smith with the order.

**{¶ 6}** On April 17, 2010, at approximately 11:00 a.m., Pickens heard a bang in her basement. She opened the basement door and saw Smith coming up

---

1. Appellee, the state of Ohio, contends, and a review of the SSOOPO and indictment clearly shows, that the SSOOPO was issued pursuant to R.C. 2903.214, not R.C. 2929.26, as the lower courts stated. Our analysis, therefore, addresses R.C. 2903.214 only.

2. The Ohio Constitution, Article IV, Section 5 gives the Supreme Court of Ohio general superintendence and rule-making authority over courts in this state. This grant of authority ensures that state courts act in compliance and consistency with the will of the General Assembly. To ensure the full force of a protection order, the Supreme Court developed forms for state-wide use following the enactment of the civil stalking-protection-order law. *See* Sup.R. 10.03 and Form 10.03-E. To comply with R.C. 2903.214(F)(1), trial courts must complete all sections of this form as directed.

the stairs. Pickens testified that Smith grabbed her from behind around her neck and put her in a headlock. He attempted to choke her, and the two began to tussle. The altercation ended when Pickens's 14-year-old son and his friend entered the house. However, Smith did not leave.

**{¶ 7}** Pickens called 9-1-1, and Columbus police officers responded. Smith attempted to flee, but the officers apprehended and arrested him.

**{¶ 8}** The return-of-service portion of the clerk of court's order to serve reflects that a deputy sheriff personally served Smith with the SSOOPO on the same day as the altercation. The state does not refute Smith's contention that service was not effected until after the incident occurred.

**{¶ 9}** On April 27, 2010, Smith was indicted for aggravated burglary, a misdemeanor charge of violating a protection order or consent agreement (R.C. 2919.27(A)(2)), domestic violence, and resisting arrest. The matter was tried to a jury, which found Smith guilty of aggravated burglary, violating a protection order, and resisting arrest. The domestic-violence charge was dismissed upon Smith's Crim.R. 29 motion.

**{¶ 10}** On appeal to the Tenth District Court of Appeals, Smith argued that without proof of service, there was insufficient evidence to establish that at the time of the altercation he knew that there was a protection order in place. Thus, the state failed to prove that he had "recklessly" violated the order within the meaning of R.C. 2919.27(A)(2), as recklessness requires perverse disregard of a known risk. R.C. 2901.22(C). The Tenth District Court of Appeals held, "Service of the protection order on the defendant is not an element of the crime of violating a protection order as defined in R.C. 2919.27(A)." *State v. Smith,* 10th Dist. No. 11AP-512, 2011-Ohio-6730, ¶ 17. It then concluded that the evidence was sufficient to permit the jury to conclude that Smith knew of the order, knew of the risk that his conduct would violate the order, and acted recklessly by disregarding that risk. *Id.* at ¶ 18.

**{¶ 11}** We accepted Smith's discretionary appeal. 131 Ohio St.3d 1539, 2012-Ohio-2025, 966 N.E.2d 893. Smith presents us with a single proposition of law: "A defendant can only be convicted of violating a protection order under R.C. 2919.27 if that order has been lawfully served."

## II. Law and Analysis

**{¶ 12}** Smith argues that an SSOOPO is not criminally enforceable pursuant to R.C. 2919.27 unless it is issued according to the terms of R.C. 2903.214, which he claims requires service on the defendant. R.C. 2903.214(F)(1) states:

> The court shall cause the delivery of a copy of any protection order that is issued under this section to the petitioner, to the respondent, and to all law enforcement agencies that have jurisdiction to enforce the order. *The court shall direct that a copy of the order be delivered to the respondent on the same day that the order is entered.*

(Emphasis added.)

**{¶ 13}** R.C. 2919.27, under which Smith was charged, reads:

> (A) No person shall recklessly violate the terms of any of the following:
>
> * * *
>
> (2) *A protection order issued pursuant to section* * * * *2903.214 of the Revised Code*.

(Emphasis added.)

**{¶ 14}** Smith claims that he was not lawfully convicted of violating R.C. 2919.27 because the protection order was not "issued pursuant to" R.C. 2903.214. He argues that the order in this case was not properly issued, because "there is no non-hearsay evidence that the complaint and order were ever served" as required by R.C. 2903.214(F)(1) and no evidence that the order was served before the alleged offense.

**{¶ 15}** In response, the state contends that the plain and unambiguous language of R.C. 2919.27 requires only proof that the defendant recklessly violated a protection order issued pursuant to R.C. 2903.214, not proof of service. It adds that Pickens had made Smith aware of the protection order on April 16. The state also invokes R.C. 2903.214(D)(2)(b) and (E)(2)(a), which, it claims, demonstrate that protection orders are enforceable upon issuance, not service.

**{¶ 16}** A plain reading of R.C. 2919.27(A)(2), however, demonstrates that it incorporates the requirements of R.C. 2903.214. Therefore, to prove a violation of R.C. 2919.27(A)(2), the state must prove, beyond a reasonable doubt, all requirements of R.C. 2903.214, including the requirement that the order be delivered to the defendant.

**{¶ 17}** The parties disagree as to whether in R.C. 2903.214(F)(1), "delivery" presupposes "service." The statute is indeed unclear as to what is meant by the term "delivery." "Where a statute is found to be subject to various interpretations, * * * a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent." *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 190, 404 N.E.2d 159 (1980). "The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the lawmaking body which enacted it * * *." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph one of the syllabus. Legislative intent must be determined primarily from the language of the statute itself. *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d

676 (1973). Other factors are also relevant. *See* R.C. 1.49 (listing factors to be considered in construing ambiguous statutes).

{¶ 18} The legislature used the words "delivery" and "delivered" in R.C. 2903.214(F)(1). R.C. Chapter 2903 does not define "delivery," so we seek guidance from other sources. *Black's Law Dictionary* (9th Ed.2009) defines "delivery" as "[t]he formal act of transferring something, such as a deed; the giving or yielding possession or control of something to another." *Id.* at 494.

{¶ 19} Giving effect to the words used in the first sentence of R.C. 2903.214(F)(1), "[t]he court shall cause the delivery * * * to the respondent," we hold that it mandates that the court bring about a transfer of possession of a copy of the SSOOPO to the respondent. The statute requires more than just the court's issuing the SSOOPO and ordering its delivery to the respondent. It requires that the order actually be delivered.

{¶ 20} R.C. 2903.214 is silent on how the court is to effectuate delivery, but we hold that "service" and "deliver[y] to the respondent" are synonymous in this context and that therefore the state must establish beyond a reasonable doubt that it served the defendant with the order before the alleged violation. *Black's Law Dictionary* defines "service" as "[t]he formal *delivery* of a writ, summons, or other legal process." (Emphasis added.) *Id*. at 1491. Thus, when R.C. 2903.214(F)(1) requires "delivery" of the order, it is requiring service on the respondent.

{¶ 21} Accordingly, R.C. 2903.214(F)(1) requires the court to serve the SSOOPO upon the respondent. To fulfill this mandate, the court must follow the requirements of the Rules of Civil Procedure. *See* R.C. 2903.214(G) ("Any proceeding under this section shall be conducted in accordance with the Rules of Civil Procedure * * *").

{¶ 22} To interpret delivery to a respondent as requiring something less than service ignores the mandate of R.C. 2901.04(A) that "sections of the Revised

Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

**{¶ 23}** This interpretation is consistent with R.C. 2903.214(D)(2)(a). That subsection requires a court issuing an ex parte order to schedule a full hearing and "give respondent notice" of the hearing and an opportunity to be heard. A trial court may continue the hearing if "the respondent has not been *served* with the petition * * * and notice of the full hearing." (Emphasis added.) R.C. 2903.214(D)(2)(a)(i).

**{¶ 24}** The state's reliance on R.C. 2903.214(D)(2)(b) and (E)(2)(a) as supportive of its position is misplaced. R.C. 2903.214(D)(2)(b) states that an ex parte order is not invalidated upon a failure of service or a continuance of the full hearing. R.C. 2903.214(E)(2)(a) states that the protection order "shall be valid until a date certain" that may not exceed five years from "issuance." Nothing in these provisions nullifies the delivery requirement of R.C. 2903.214(F)(1). In fact, R.C. 2903.214(D)(2)(a)(i) and (D)(2)(b) reinforce our view that "delivery" means service by referring to instances in which "the respondent has not been served" and in which there has been "a failure of service."

**{¶ 25}** In this case, the Franklin County Court of Common Pleas carried out the mandate of R.C. 2903.214(F)(1) in conformity with our interpretation. On April 12, 2010, the court granted the petition and issued Form 10.03-E. It also directed the clerk to issue an order to serve to the sheriff for service upon Smith. But service was not effected until after the altercation between Pickens and Smith.

**{¶ 26}** Because evidence of compliance with the delivery requirement of R.C. 2903.214(F)(1) before the alleged offense is essential to establishing a violation of R.C. 2919.27(A)(2), we hold that the evidence was insufficient to sustain Smith's conviction pursuant to R.C. 2919.27(A)(2).

**{¶ 27}** We make this determination mindful of the importance of protection orders. A violation of a properly issued SSOOPO must not be

countenanced. However, we cannot ignore the defendant's right to have the SSOOPO served in conformity with the law. R.C. 2903.214(F)(1) requires service upon a respondent. Without proof that service was achieved, a conviction for violating R.C. 2919.27(A)(2) cannot stand. But the victim and the state often have recourse. An offender who cannot be prosecuted for conduct that would have violated the protection order had it been properly served often commits other crimes during the same incident, such as burglary or assault, for which the offender may be punished to the full extent of the law.

### III. Conclusion

{¶ 28} The requirements of R.C. 2903.214 are incorporated into R.C. 2919.27(A)(2). R.C. 2903.214(F)(1) requires delivery of the SSOOPO to the respondent before a violation of R.C. 2919.27(A)(2) can be charged. The only manner by which the court is able to fulfill this mandate is to serve the SSOOPO. Therefore, to sustain a conviction for a violation of a protection order pursuant to R.C. 2919.27(A)(2), the state must establish, beyond a reasonable doubt, that it served the defendant with the order before the alleged violation. Accordingly, we reverse the judgment of the court of appeals and remand the matter to the trial court for proceedings consistent with this decision.

Judgment reversed

and cause remanded.

PFEIFER, O'DONNELL, and O'NEILL, JJ., concur

O'CONNOR, C.J., and LANZINGER and FRENCH JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 29} Robert L. Smith Jr. was charged with a first-degree misdemeanor offense of violating a protection order. R.C. 2919.27(A)(2) provides, "No person shall recklessly violate the terms of * * * a protection order issued pursuant to section * * * 2903.214 of the Revised Code." The elements that the state must

prove beyond a reasonable doubt are that on April 17, 2011, in Franklin County, Smith recklessly violated a civil protection order issued under R.C. 2903.214. Proof of service or delivery is not needed for a conviction.

{¶ 30} The majority focuses on the technical service that is to take place after the order is issued. R.C. 2903.214(F)(1) states:

> The court shall cause the delivery of a copy of any protection order that is issued under this section to the petitioner, to the respondent, and to all law enforcement agencies that have jurisdiction to enforce the order. The court shall direct that a copy of the order be delivered to the respondent on the same day that the order is entered.

{¶ 31} I disagree that this provision means that the crime of violating a protection order may not be charged unless a defendant has first been served with the order itself. The order has independent force, even apart from service. R.C. 2903.214(E)(2)(a) states that the protection order's validity dates from its issuance.

{¶ 32} One may not be charged with the crime of violating a protection order under R.C. 2919.27(A) unless that order is "issued," but the statute is silent about delivery or service. That is not to say that service may not be relevant in a specific case. Service may indeed be relevant in determining whether there was proof beyond a reasonable doubt that the defendant acted recklessly. The state must prove a mens rea of recklessness—whether a defendant had knowledge of the order's existence and yet disregarded it. Without evidence of a defendant's knowledge of the order, a jury cannot find that a defendant acted with disregard of a known risk. *See* R.C. 2901.22(C) (defining "recklessly").

**{¶ 33}** Here, however, Pickens gave testimony that, if believed, proved that she told Smith she had obtained an order and told him what it said. He ignored the protection order to stay away from Pickens and thereby violated it.

**{¶ 34}** I respectfully dissent and would hold that service of the protection order on the defendant is not an element of the crime of violating a protection order as defined in R.C. 2919.27(A). I would affirm the judgment of the Tenth District Court of Appeals.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Sheryl L. Prichard, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellant.

_____