[Cite as *State v. Hilton*, 2016-Ohio-8219.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2015-P-0062 and 2015-P-0063** |
| ALBERT M. HILTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case Nos. 2014 CR 00952 and 2015 CR 00325.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Kimberly Anne Valenti,* P.O. Box 1149, Hudson, OH 44236 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Albert M. Hilton, appeals from the August 6, 2015 judgment of the Portage County Court of Common Pleas, sentencing him in two cases, Case Nos. 2014 CR 00952 and 2015 CR 00325, involving failure to comply with order or signal of police officer, resisting arrest, and five counts of violating a protection order following jury trials. In this consolidated appeal, appellant raises issues regarding sufficiency and manifest weight of the evidence. Finding no error, we affirm.

{¶2} In Case No. 2014 CR 00952, appellant was indicted by the Portage County Grand Jury on two counts: count one, failure to comply with order or signal of police officer, a felony of the third degree, in violation of R.C. 2921.331; and count two, resisting arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A).

{¶3} A jury trial commenced on June 16, 2015. Three witnesses testified for appellee, the state of Ohio: Gordan Fischer, Portage County chief investigator; Benjamin Vecchio, an officer with the Ravenna Police Department ("RPD"); and Kevin Lafferty, a patrolman with the RPD.

{¶4} The RPD received a call concerning a reckless operation involving a silver Jeep in the Shadowlawn Hills allotment. Officer Vecchio and Patrolman Lafferty were dispatched. Officer Vecchio arrived first and observed the silver Jeep, driven by appellant, make a U-turn. The officer followed appellant but saw that the Jeep had turned around and started coming toward him. The officer activated his cruiser's lights and sirens. The cruiser video captured most of the incident. Appellant ran a stop sign and kept driving.

{¶5} The pursuit continued through a residential area where people were outside of their homes and there were other vehicles in the area. The posted speed limit is 25 to 35 m.p.h. During the pursuit, appellant reached speeds of 44 m.p.h. and ran additional stop signs. Officer Vecchio indicated that appellant went left of center, two or three vehicles had to pull over to get out of appellant's way, appellant almost hit Patrolman Lafferty's cruiser, and appellant almost ran head on into a truck. Patrolman Lafferty also indicated that appellant almost hit other vehicles, including his cruiser, and that there was a person standing near the road during the pursuit.

2

{¶6} Appellant ended up jumping out of his vehicle while it was still moving, running up a driveway, and jumping over a fence. The officers eventually found appellant in his nearby residence. Appellant's father, James Hilton, answered the door. Appellant ran upstairs, a struggle ensued, and he was arrested.

{¶7} At the close of the state's case, defense counsel moved for an acquittal pursuant to Crim.R. 29 which was overruled by the trial court. Appellant presented no witnesses and did not testify. Appellant was found guilty of both counts, failure to comply with order or signal of police officer and resisting arrest.

{¶8} In Case No. 2015 CR 00325, appellant was indicted by the Portage County Grand Jury on two counts of domestic violence, felonies of the fourth degree, in violation of R.C. 2919.25. A protection order was filed on May 11, 2015, subjecting appellant to the following:

{¶9} "Only the Court may change this Protection Order. The Petitioner/Alleged Victim [Carol Anderla] cannot give you legal permission to change this Order. If you go near the Petitioner/Alleged Victim or other protected person, even with their permission, you may be arrested. Only the Court may modify or terminate this Protection Order. Unless the Court modifies or terminates this Order, you may be arrested for violating this Protection Order. **You act at your own risk if you disregard this WARNING.**" (Emphasis sic.)

{¶10} The protection order further specified the following:

{¶11} "**DEFENDANT SHALL NOT INITIATE OR HAVE ANY CONTACT** with the protected persons named in this Order. * * * Contact includes, but is not limited to, landline, cordless, cellular or digital telephone; text; instant messaging; fax; e-mail;

3

voice mail; delivery service; social networking media; blogging; writings; electronic communications; or communications by any other means directly or through another person. Respondent may not violate this Order **even with the permission of a protected person**." (Emphasis sic.)

{¶12} Appellant acknowledged service of the protection order and signed the document on May 11, 2015.

{¶13} On June 26, 2015, an amended indictment was filed charging appellant with seven additional counts: one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1); five counts of violating a protection order, felonies of the fifth degree, in violation of R.C. 2919.27; and one count of intimidation of a crime victim or witness, a felony of the third degree, in violation of R.C. 2921.04(B).

{¶14} A jury trial commenced on July 21, 2015. Five witnesses testified for the state: Edward Panzeter, a general surgeon at Robinson Memorial Hospital; Carol Anderla, who was involved in a romantic relationship with appellant and was named as the alleged victim in the protection order; Jennifer Lohr, a previous ex-girlfriend of appellant's; Elizabeth Hurd, a Deputy Sheriff with the Portage County Sheriff's Department ("PCSD"); and Gregory Johnson, Lieutenant and Chief of the Detective Bureau with the PCSD.

{¶15} The protection order violations stemmed from incidents of alleged domestic violence and felonious assault. Ms. Anderla indicated that appellant had abused her. She voiced the abuse during a follow-up doctor appointment with Dr. Panzeter.

4

**{¶16}** Ms. Anderla knew there was a protection order issued in this case. She received a copy of it in the mail before leaving to go to Florida. She received another notice when she returned from Florida. Ms. Anderla was aware that appellant could not contact her via phone, mail, or in person. She explained that her primary phone was a cell phone that had belonged to appellant, referred to as the "Obama phone."

**{¶17}** The evidence revealed that appellant made five recorded phone calls to Ms. Anderla from jail after the protection order was issued against him on May 11, 2015, which were played for the jury: (1) May 13, 2015 at 7:47 p.m. (Ms. Anderla heard the jail recording and identified appellant's voice); (2) May 14, 2015 at 7:00 p.m.; (3) May 15, 2015 at 5:12 p.m.; (4) May 28, 2015 at 6:19 p.m.; and (5) May 28, 2015 at 6:39 p.m. (Ms. Anderla heard the jail recording, the caller identified himself as "Wes," and she recognized the voice as appellant's).

**{¶18}** Lieutenant Johnson testified that part of his job duties includes reviewing and monitoring jail phone calls. He explained that the jail contracts with Securis, a Texas company, which maintains and runs the jail inmate recording system. He also explained that as part of the booking process, each inmate gains access to the jail phone system through the use of a pin number, i.e., his or her social security number.

**{¶19}** Lieutenant Johnson conducted a search by Ms. Anderla's outgoing phone number from the jail. He listened to the calls, downloaded, and recorded them. Lieutenant Johnson determined and testified regarding the five calls placed by appellant to Ms. Anderla beginning on May 13, 2015, which were played for the jury. He confirmed that the two voices heard in all five calls were Ms. Anderla's and appellant's.

5

Although appellant had used Wes', another inmate, pin number, Lieutenant Johnson explained that inmates often share their phone access pins at the jail.

{¶20} Lieutenant Johnson further testified that appellant was the subject of a protection order. The order stated that appellant may be arrested for contacting Ms. Anderla through various communications including, inter alia, phone, even with her permission. Lieutenant Johnson indicated that appellant received service of the order, appellant's signature appeared next to the "service acknowledged by," and the order was served on May 11, 2015. Appellant received a copy, the court received a copy, and the sheriff's department maintained a copy.

{¶21} Regarding service of the protection order, Lieutenant Johnson specifically testified on direct examination (pages 400-402):

{¶22} "Q. Can you tell me if the Defendant, Albert Hilton, was served a copy of that document?

{¶23} "A. Yes, he was.

{¶24} "Q. How do you know?

{¶25} "A. Service acknowledged by there's a signature and I believe to be of Albert Hilton and it was served on May 11, 2015.

{¶26} "Q. Are you familiar with the procedure on how protection orders get served to Portage County inmates?

{¶27} "A. Depending on how - - if they're getting released from the jail, a lot of times the Booking Officer will serve them. It will get faxed over and they're served with that copy before they walk out of the jail.

6

**{¶28}** "If not, a lot of times it will be sent down to my Department and then a Deputy will go back and make the service.

**{¶29}** "Q. Making the service, you talked about signing an acknowledgment, right?

**{¶30}** "A. Providing them a copy of it and then getting the receipt that it was signed.

**{¶31}** "Q. So they get to keep their copy?

**{¶32}** "A. Yes.

**{¶33}** "Q. Okay. And that receipt of service, do you know where it goes?

**{¶34}** "A. We maintain a copy of it and it also comes back to the Courts.

**{¶35}** "Q. We meaning Sheriff's Department?

**{¶36}** "A. I'm sorry, the Sheriff's Department. Because we make a record of those in our Dispatch Center.

**{¶37}** "Q. Yes, sir.

**{¶38}** "So can you tell me what day Albert Hilton was served with that copy of the Protection Order?

**{¶39}** "A. May 11, 2015."

**{¶40}** At the close of the state's case, defense counsel moved for an acquittal pursuant to Crim.R. 29 which was overruled by the trial court. The defense presented one witness, James Hilton, appellant's father. Defense counsel renewed its Crim.R. 29 motion for acquittal which was overruled by the trial court. Appellant was found not guilty on count one, domestic violence, and count nine, intimidation of a crime victim or witness. The jury could not make a decision on count two, domestic violence, or count

three, felonious assault. Appellant was found guilty of the five protection order violations.

**{¶41}** The trial court sentenced appellant in both cases to a total prison term of eight years.[1] In Case No. 2014 CR 00952, appellant was sentenced to three years in prison for failure to comply with order or signal of police officer (consecutive) and 90 days for resisting arrest (concurrent). In Case No. 2015 CR 00325, appellant was sentenced to one year for each of the five counts of violating a protection order (consecutive). The court notified appellant that following his release from prison, he may be supervised under post-release control for three years. Appellant filed timely appeals and raises the following two assignments of error:[2]

**{¶42}** "[1.] The State failed to present sufficient evidence to support the offense of violating a protection order and the jury's verdicts, Appellants' (sic) convictions as a matter of law and/or was the jury's verdicts against the manifest weight of the evidence.

**{¶43}** "[2.] The trial court erred in overruling Appellants' (sic) Crim.R. 29 motions for acquittal; as originally made and renewed."

**{¶44}** We note that appellant had two separate and distinct trials. Thus, the facts are different. However, the legal issues are the same. Appellant does not take issue with his sentence. Rather, appellant's appeal centers around issues related to his trials. Appellant's two assignments of error focus on sufficiency (involving failure to comply with order or signal of police officer in Case No. 2014 CR 00952 and violating a protection order in Case No. 2015 CR 00325) and manifest weight of the evidence

---

1. The trial court issued a sentencing entry on July 29, 2015 and a nunc pro tunc entry on August 6, 2015.

2. This court sua sponte consolidated both appeals, Case Nos. 2015-P-0062 and 2015-P-0063, for all purposes.

8

(finding him guilty of the five protection order violations in Case No. 2015 CR 00325). Because the assignments are interrelated, we will address them together.

{¶45} With regard to sufficiency, in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 (1978), the Ohio Supreme Court established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶46} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

{¶47} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶48} "'"The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*"'"

9

**{¶49}** "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" (Emphasis sic.) (Citations omitted.)

**{¶50}** "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

**{¶51}** With regard to manifest weight, this court stated in *Schlee, supra*, at *14-15:

**{¶52}** "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

**{¶53}** "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in

resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.)

**{¶54}** A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶55}** With respect to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

**{¶56}** "A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence." *Patterson v. Godale*, 11th Dist. Lake Nos. 2014-L-034 and 2014-L-042, 2014-Ohio-5615, ¶23, citing *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32 ("'Since there must be sufficient evidence to take a case to the jury, it follows that "a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency."'" (Emphasis sic.) (Citations omitted.))

**{¶57}** For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and, thus, further conclude it is supported by sufficient evidence.

**{¶58}** Appellant takes issue with the guilty finding in Case No. 2014 CR 00952, failure to comply with order or signal of police officer, a felony of the third degree, in violation of R.C. 2921.331, which states in part:

{¶59} "(B)  No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

{¶60} "* * *

{¶61} "(5)

{¶62} "(a)  A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

{¶63} "* * *

{¶64} "(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."

{¶65} As stated, the RPD received a call concerning a reckless operation involving a silver Jeep in the Shadowlawn Hills allotment.  Officer Vecchio and Patrolman Lafferty were dispatched.  Officer Vecchio arrived first and observed the silver Jeep, driven by appellant, make a U-turn.  The officer followed appellant but saw that the Jeep had turned around and started coming toward him.  The officer activated his cruiser's lights and sirens.  The cruiser video captured most of the incident. Appellant ran a stop sign and kept driving.

{¶66} The pursuit continued through a residential area where people were outside of their homes and there were other vehicles in the area.  The posted speed limit is 25 to 35 m.p.h.  During the pursuit, appellant reached speeds of 44 m.p.h. and ran additional stop signs. Officer Vecchio indicated that appellant went left of center, two or three vehicles had to pull over to get out of appellant's way, appellant almost hit

Patrolman Lafferty's cruiser, and appellant almost ran head on into a truck. Patrolman Lafferty also indicated that appellant almost hit other vehicles, including his cruiser, and there was a person standing near the road during the pursuit.

{¶67} Appellant ended up jumping out of his vehicle while it was still moving, running up a driveway, and jumping over a fence. The officers eventually found appellant in his nearby residence. Appellant's father, James Hilton, answered the door. Appellant ran upstairs, a struggle ensued, and he was arrested.

{¶68} The testimonial evidence along with the cruiser video establish sufficient evidence for the jury to have found appellant guilty beyond a reasonable doubt of failure to comply with order or signal of police officer and that he, through the operation of his motor vehicle, created a substantial risk of serious physical harm to persons or property during the pursuit. R.C. 2921.331(B)(5)(a)(ii).

{¶69} In addition, appellant also takes issue with the guilty finding of the five protection order violations in Case No. 2015 CR 00325, felonies of the fifth degree, in violation of R.C. 2919.27, which states in part:

{¶70} "(A) No person shall recklessly violate the terms of any of the following:

{¶71} "(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code;

{¶72} "(2) A protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code;

{¶73} "* * *

{¶74} "(B)

{¶75} "(1) Whoever violates this section is guilty of violating a protection order.

13

**{¶76}** "* * *

**{¶77}** "(3) If the offender previously has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for a violation of a protection order * * * or one or more violations of this section, violating a protection order is a felony of the fifth degree."

**{¶78}** R.C. 2901.22(C) states: "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

**{¶79}** R.C. 2945.75(B)(1) provides: "Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction."

**{¶80}** Defense counsel stipulated to a certified copy of appellant's prior protection order conviction from a 2006 case. Defense counsel also stipulated to the certified copy of the protection order issued in this case. Again, the order stated that appellant may be arrested for contacting Ms. Anderla through various communications including, inter alia, phone, even with her permission. Contrary to appellant's assertion, it is of no consequence whether he called Ms. Anderla on the "Obama phone," i.e., his own cell phone, from the telephone at the jail. The protection order specifically stated that he was to have no contact with her whatsoever. The order was dated May 11, 2015. The order contained appellant's service acknowledgement and signature.

14

Specifically, appellant signed his name under the heading, "Service acknowledged," and handwrote the date as "5-11-15." As addressed, Lieutenant Johnson testified at trial regarding such service. Thus, service was perfected. *See* R.C. 2919.26(G)(1) ("The court shall direct that a copy of the order be delivered to the defendant on the same day that the order is entered.")

{¶81} Thus, the trial testimony and evidence establish that appellant was served with a copy of the protection order and violated it five times. Appellant's signature acknowledging receipt of the order shows actual service and satisfies any notice requirement. As stated, appellant made five recorded phone calls to Ms. Anderla from jail after the protection order was issued against him on May 11, 2015, which were played for the jury: (1) May 13, 2015 at 7:47 p.m. (Ms. Anderla heard the jail recording and identified appellant's voice); (2) May 14, 2015 at 7:00 p.m.; (3) May 15, 2015 at 5:12 p.m.; (4) May 28, 2015 at 6:19 p.m.; and (5) May 28, 2015 at 6:39 p.m. (Ms. Anderla heard the jail recording, the caller identified himself as "Wes," and she recognized the voice as appellant's).

{¶82} Lieutenant Johnson conducted a search by Ms. Anderla's outgoing phone number from the jail. He listened to the calls, downloaded, and recorded them. Lieutenant Johnson determined and testified regarding the five calls placed by appellant to Ms. Anderla beginning on May 13, 2015. He confirmed that the two voices heard in all five calls were Ms. Anderla's and appellant's. Although appellant had used Wes', another inmate, pin number, Lieutenant Johnson explained that inmates often share their phone access pins at the jail.

15

{¶83} Lieutenant Johnson further testified that appellant was the subject of a protection order. The order stated that appellant may be arrested for contacting Ms. Anderla through various communications including, inter alia, phone, even with her permission. Lieutenant Johnson indicated that appellant received service of the order, appellant's signature appeared next to the "service acknowledged by", and the order was served on May 11, 2015. Appellant received a copy, the court received a copy, and the sheriff's department maintained a copy.

{¶84} Accordingly, the state established beyond a reasonable doubt that appellant was served with the protection order before committing the violations, thereby supporting his conviction for violating the order. *See State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, syllabus.

{¶85} Pursuant to *Schlee, supra*, there is sufficient evidence upon which the juries could reasonably conclude beyond a reasonable doubt that the elements of failure to comply with order or signal of police officer in Case No. 2014 CR 00952 and violating a protection order in Case No. 2015 CR 00325 were proven. Thus, the trial court did not err in overruling appellant's Crim.R. 29 motions.

{¶86} Also, the jury chose to believe the state's witnesses. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, we cannot say that the jury clearly lost its way in finding appellant guilty of the five protection order violations in Case No. 2015 CR 00325. *Schlee, supra*, at *14-15; *Thompkins, supra*, at 387.

{¶87} Appellant's first and second assignments of error are without merit.

{¶88} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur in judgment only.