[Cite as *State v. Hart*, 2024-Ohio-2037.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

THOMAS MICHAEL HART,

        Defendant-Appellant.

CASE NO. 2023-A-0070

Criminal Appeal from the
County Court, Eastern District

Trial Court No. 2023 CRB 00084 E

# O P I N I O N

Decided: May 28, 2024
Judgment: Reversed; conviction vacated

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Mark Majer*, Assistant Prosecutor, 25 West Jefferson Street, Ashtabula, OH 44047 (For Plaintiff-Appellee).

*Sean P. Martin*, 113 North Chestnut Street, Suite A, Jefferson, OH 44047 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1}    Appellant, Thomas Michael Hart, appeals the judgment entry imposing sentence following a bench trial wherein the trial court found him guilty of violating a protection order.  We reverse and vacate Hart's conviction.

{¶2}    In 2023, a complaint was filed charging Hart with violating a protection order, a first-degree misdemeanor, in violation of R.C. 2919.27. Hart pleaded not guilty, and the case proceeded to bench trial.

{¶3}    The trial court found Hart guilty and proceeded to sentencing.  On November 20, 2023, the trial court issued an entry sentencing Hart to 180 days of

confinement, fully suspended, a $100.00 fine, one year of non-reporting probation, and no contact with the petitioner named in the protection order.

**{¶4}** In his sole assigned error, Hart maintains:

**{¶5}** "Appellant's conviction fell against the manifest weight of the evidence and sufficiency of the evidence."

**{¶6}** Hart challenges the manifest weight and sufficiency of the evidence supporting service of the protection order to support a conviction under R.C. 2919.27. We do not address the weight of the evidence, because, for the reasons addressed below, we conclude that Hart's conviction was not supported by sufficient evidence.

**{¶7}** The question of whether sufficient evidence supports the conviction "is a test of adequacy," which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph two of the syllabus.

**{¶8}** The trial court convicted Hart of violating R.C. 2919.27, which provides, in relevant part, "(A) No person shall recklessly violate the terms of any of the following: * * * (2) A protection order issued pursuant to section * * * 2903.214 of the Revised Code * * *." With respect to the service issue presented in this appeal, pursuant to R.C. 2903.214(F)(1), "The court shall cause the delivery of a copy of any protection order that is issued under this section to the petitioner, to the respondent, and to all law enforcement

2

agencies that have jurisdiction to enforce the order. The court shall direct that a copy of the order be delivered to the respondent on the same day that the order is entered."[1] Accordingly, the Ohio Supreme Court has held that "[t]o sustain a conviction for a violation of a protection order pursuant to R.C. 2919.27(A)(2), the state must establish, beyond a reasonable doubt, that it served the defendant with the order before the alleged violation." *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972, ¶ 28.

{¶9} Subsequent to the Ohio Supreme Court's decision in *Smith*, in 2017, the General Assembly revised R.C. 2929.27. Division (D) of that section now provides:

> In a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued, and proves that the defendant recklessly violated the terms of the order or agreement.

R.C. 2919.27(D). Thus, the state must prove that, prior to the alleged reckless violation of the protection order, (1) service of the protection order was completed on the defendant, (2) the protection order was shown to the defendant, or (3) a judge, magistrate, or law enforcement officer informed the defendant that the order had been issued.

{¶10} Here, at trial, the state presented the testimony of the protected person and the responding officer. This testimony indicated that Hart and the protected person own adjoining parcels of land. In November 2022, the protected person obtained a five-year

---

1. On appeal, Hart relies on R.C. 3113.31(F)(1) as the service provision applicable to the underlying protection order in this case. However, R.C. 3113.31 pertains to domestic violence civil protection orders. Here, the underlying protection order is a civil stalking protection order issued pursuant to R.C. 2903.214. Nonetheless, the provisions of R.C. 2903.214(F)(1) and R.C. 3113.31(F)(1) contain substantively the same service requirements.

Case No. 2023-A-0070

civil stalking protection order against Hart in the Ashtabula County Court of Common Pleas following a full hearing. A certified copy of the protection order was admitted into evidence. Therein, the protection order notes that Hart did not appear at the full hearing, but he had been served. Among other provisions, the protection order prohibits Hart from initiating or having any contact with the protected person. The protection order instructs the clerk to serve a copy of the order upon Hart pursuant to Civ.R. 65.1. Although the form contains a section where the clerk may designate the date that the parties were served the order in accordance with Civ.R. 5(B) and 65.1(C)(3), this portion of the protection order is not completed.

{¶11} The testimony of the state's witnesses further provides that, on February 28, 2023, the protected person was walking on her property when she observed Hart pull into his driveway. When Hart was approximately 150 feet away from the protected person, he exited his vehicle, made eye contact with the protected person, and said, "Get the fuck out of here." As a result, the protected person reported a violation of the protection order to law enforcement.

{¶12} The deputy who responded to the call testified that he confirmed that a protection order was in place through LEADS. The deputy further testified that he learned through LEADS that Hart had been served the protection order in 2022. During the deputy's testimony, he identified a certified copy of a completed Ohio Supreme Court Form 10-A ("10-A Form"), which is a notice of the protection order to the National Crime Information Center. The 10-A Form is signed by a magistrate of the court that issued the protection order and was admitted into evidence. The 10-A Form contains a checkmark box followed by: "Service Completed (Law Enforcement Agency: If unchecked, presume

4

Service Unknown)."  The box that precedes this statement is marked.  The deputy maintained that, based on his understanding of the form, the marked box would indicate that Hart was served a copy of the protection order.

{¶13} Following the testimony of these witnesses, the state rested, and the defense moved for acquittal under Crim.R. 29.  In partial support, the defense maintained that there was no evidence that Hart was aware of the existence of the protection order.  The trial court denied the motion.

{¶14} Thereafter, the defense presented its case, which included Hart's testimony.  Hart did not dispute his verbal contact with the protected person on February 28, 2023.  However, Hart maintained that he had never seen the protection order issued in this case until defense counsel provided it to him in May 2023, after the incident at issue.  Hart testified that he does not have United States Postal Service delivered to his house and does not have a P.O. Box.  He further indicated that he had never received certified mail from the Ashtabula County Court of Common Pleas and had not ever been personally delivered anything by the sheriff's department.  On cross-examination, Hart confirmed that he had learned from police officers who came to his house after the incident at issue that the protected person had obtained a "TPO" against him.

{¶15} After the defense rested, it renewed its Crim.R. 29 motion.  With respect to the state's evidence of service of the protection order, the following exchange occurred between the court and the state:

> THE COURT: -- respond to the Rule 29.
>
> [THE STATE]: Yes, Your Honor.
>
> So, here's what we do know today with respect to this service issue that has been alleged and has been raised as grounds

5

for dismissal. When you look at the actual Protection Order itself, it says that Respondent did not appear but was served, meaning that he was served notice of the hearing. That didn't just get put in the Protection Order. Courts take service very seriously.

And I practice in our Civil Division. For example, I do things like Health Department hearings and things like that. One of the first things the Judge checks for is, was the other party served before you've even had a hearing? The Judges upstairs take that very seriously.

THE COURT: Okay.

[THE STATE]: So, this hearing would not have happened if he was not placed on notice of the hearing.

Now, with respect to the actual Order, I do agree with [defense counsel] that someone would have to have knowledge of an order to be able to violate the order. What we do know is, in State's Exhibit 1 [(Form 10-A, notice of protection order to NCIC)], there is a box here marked "Service Completed". That also does not just get marked. Again, because of the severity and the consequences of violating these kinds of orders, these things must be taken very seriously, so I direct that to the Court's attention.

Additionally, we heard testimony today from the deputy. I asked him if he had any way to know if the Defendant was served. He indicated that he looked at the LEADS and he saw where there was an entry that the Defendant was served a copy of the Order. Again, that would not just get inputted by itself unless it was the case.

The State does believe that it has proven its case beyond a reasonable doubt that there was knowledge of this Order and that there was a violation of the Order. I'll get more into that in closing. But in terms of where we are at today, Your Honor, again, we should be able to move forward to closing remarks because for the reasons I've just outlined; that there is -- one of the exhibits that the State referenced where service was marked, otherwise completed, and the deputy's credibility (sic.) testimony that he reviewed the LEADS and saw where there was service.

6

THE COURT: And it is your contention that he did receive service of the hearing but did not appear, and it's because he did not appear that he didn't have knowledge of the additional restraints?

[THE STATE]: It's my position that he -- he never should have talked to her, Your Honor. He never -- he clearly would have had knowledge of both the hearing and the Order itself.

THE COURT: Okay.

[THE STATE]: Service completed on this form means he was served a copy of the Order.

THE COURT: Okay. Before I rule on your Rule 29, I'm going to step out for a moment.

(Off the record.)

THE COURT: Okay.

[The state], can you find me the proof of service that is executed by the Sheriff's Department when they served the Defendant, or served somebody who is being noticed of a CPO or TPO?

[THE STATE]: With respect to this particular case, Your Honor, I did try to locate that particular return of service and was unable to do so. However, as I did indicate, there are forms marked for service, and it was inputted in LEADS. Again, my position is that those things do not just otherwise get inputted in LEADS unless they were served. Again, we're looking at a paper process here, Your Honor, and, unfortunately, it seems, you know, people are not perfect.

Um, the State's position would be that there is clearly a return of service that must have existed that we are unable to locate at this time, but, again, it was inputted into the proper databases and marked on it was served. It was signed off on here, on Form 10-A, that service was complete. Our position is that that is testimony and evidence that would substantiate service.

THE COURT: Well, I wrote down here in the very beginning of this trial that there were two proofs of service before the

7

Case No. 2023-A-0070

violation, LEADS, and the TPO checkbox NCIC. Did you finish arguing your Rule 29?

[THE STATE]: I don't have anything else to add --

THE COURT: Okay.

[THE STATE]: -- to that otherwise, Your Honor.

THE COURT: Okay. Well, again, I am going to deny the Rule 29, which leaves it squarely in my -- the decision squarely in my lap.

{¶16} Thereafter, the parties proceeded to closing argument. The trial court then found Hart guilty and proceeded directly to sentencing.

{¶17} On appeal, Hart maintains that the evidence did not support that he was served with the protection order or that he had constructive notice of the protection order as provided in R.C. 2919.27(D). The state responds that it demonstrated service of the protection order through the deputy's testimony that service was noted in LEADS and through the completed 10-A Form. Because the state does not dispute that there exists no evidence of the circumstances contained in R.C. 2919.27(D) that would relieve it of producing evidence of service, we limit our discussion accordingly.

{¶18} As set forth above, where R.C. 2919.27(D) does not apply, "the state must establish beyond a reasonable doubt that it served the defendant with the order before the alleged violation." *Smith*, 2013-Ohio-1698. The service of the protection order "must follow the requirements of the Rules of Civil Procedure." *Smith* at ¶ 21, citing R.C. 2903.214(G) ("Any proceeding under this section shall be conducted in accordance with the Rules of Civil Procedure * * *."). With respect to service of protection orders, Civ.R. 65.1(C) provides:

8

Case No. 2023-A-0070

(1) Service by Clerk. The clerk shall cause service to be made of a copy of the petition, and all other documents required by the applicable protection order statute to be served on the Respondent and, if applicable, on the parent, guardian, or legal custodian of the Respondent.

(2) Initial Service. Initial service, and service of any ex parte protection order that is entered, shall be made in accordance with the provisions for personal service of process within the state under Civ.R. 4.1(B) or outside the state under Civ.R. 4.3(B)(2). Upon failure of such personal service, or in addition to such personal service, service may be made in accordance with any applicable provision of Civ.R. 4 through Civ.R. 4.6.

(3) Subsequent Service. After service has been made in accordance with division (C)(2) of this rule, any additional service required to be made during the course of the proceedings on Respondent and, if applicable, on the parent, guardian, or legal custodian of Respondent, shall be made in accordance with the provisions of Civ.R. 5(B).

*See also* 2016 Staff Notes to Civ.R. 65.1 ("The plain language of division (C)(3) of this rule indicates that subsequent service in civil protection order proceedings after the petition and ex parte order has been served, including service of a protection order entered after full hearing, must follow Civ.R. 5(B)."). *But see State v. Fleming*, 1st Dist. Hamilton No. C-220275, 2023-Ohio-849, ¶ 14 (holding that, although Fleming was personally served with an ex parte protection order, which had expired, "[t]he state * * * presented no evidence that Fleming was served with either the interim or the final protection orders in accordance with Civ.R. 4.1").

{¶19} In our review of the evidence of service of the protection order, we are mindful that Hart did not object to the deputy's testimony regarding the service notation on LEADS or to the admission of the certified copy of the 10-A Form noting completed service. Nor does he develop an argument on appeal regarding the propriety of the trial court's consideration of this evidence for purposes of determining whether service of the

9

protection order was completed. Instead, he maintains that this evidence is insufficient to demonstrate the required service and that the determination that service was properly completed is against the weight of the evidence.

{¶20} We agree with Hart to the extent that this evidence was insufficient to demonstrate service. Even when viewing this evidence in the light most favorable to the state, it demonstrates only that a magistrate of the issuing court, and whoever entered the relevant data into LEADS, believed service of the protection order was complete. However, no underlying facts supporting such beliefs were produced into evidence. Neither the 10-A Form nor the deputy's testimony regarding the LEADS notation provide any evidence as to the manner or date of service by the clerk to allow a finder of fact to determine whether the service comported with the Civil Rules. Additionally, as set forth above, although the protection order contained instructions to the clerk to serve the order on Hart, the portion of the form indicating completed service by the clerk was left blank, and the state affirmatively acknowledged that it could not locate a "return of service" for the protection order.

{¶21} Last, we note that the state further maintains that Hart was served with the *petition* for a protection order, and, thus, he was on notice of the proceedings, chose not to attend the full hearing on the protection order, and acted recklessly in his communication with the protected person. The state then attaches a copy of the return of service of the *petition* for a civil protection order.

{¶22} Although we will not now consider evidence not submitted to the trial court on an element of the offense, we note that the state's position that service of the *petition* put Hart on notice that his conduct may be restrained is misplaced. A similar argument

10

was rejected in *Smith*, as the issue is whether the *protection order* was served in accordance with R.C. 2903.214(F)(1), such that it was issued "pursuant to" that section for purposes of R.C. 2919.27(A)(2). *See Smith*, 2013-Ohio-1698, at ¶ 16.

{¶23} Accordingly, the state failed to produce sufficient evidence that service of the protection order was completed in accordance with the Civil Rules or that it was relieved of producing such evidence due to proof of one of the circumstances described in R.C. 2919.27(D). Thus, Hart's sole assigned error has merit. In so holding, we emphasize that our opinion and judgment have no effect on the ongoing validity of the protection order.

{¶24} Consequently, the trial court's judgment is reversed, and the conviction is vacated.

MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2023-A-0070