[Cite as *State v. Matthews*, 2018-Ohio-2424.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27718 |
| | : | |
| v. | : | Trial Court Case No. 17-CRB-1903 |
| | : | |
| ATAYVIA MATTHEWS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of June, 2018.

. . . . . . . . . . .

ANDREW D. SEXTON, Atty. Reg. No. 0070892, 335 W. Third Street, Room 390, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, P.O. Box 291771, 101 Southmoor Circle NW, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Atayvia Matthews appeals from her conviction and sentence on misdemeanor charges of menacing and aggravated menacing.

{¶ 2} In her sole assignment of error, Matthews challenges the legal sufficiency and manifest weight of the evidence to sustain her aggravated menacing conviction.

{¶ 3} The present appeal stems from a dispute that occurred at the manager's office in a Dayton-area apartment complex. A resident, Tameka Hines, went to the office to complain about children writing on her car. Matthews and her brother followed Hines to the office because they believed Hines was going to accuse Matthews's children. The complex manager, Dwanna Tory, testified at trial that she refused to speak to Matthews's brother because he was not a resident. According to Tory, Matthews became enraged and threatened her. Specifically, Tory testified that Matthews told her, "B**ch, I will f*** you up. I will bash your head in the m***** f****** wall." (Tr. at 15). Tory testified that Matthews "balled up" her fist and got nose to nose with Tory while "yelling, cursing, spitting in my face telling me how she would bash my m***** f****** head in. She would beat my a**." (*Id.* at 16). Tory responded by calling 911. She testified that she was afraid and feared for her life. (*Id.* at 18). Hines, the complaining tenant, observed the incident. She recalled that Matthews had her fists "balled up" and was "moving back and forth like she wanted some type of altercation." (*Id.* at 76). Hines testified that Matthews was "very confrontational" and was "breathing real heavy." (*Id.*). Hines stated that she heard Matthews threaten to "bash [Tory's] head in" and call her "all types of b**ches." (*Id.* at 74). Based on Matthews's demeanor, Hines perceived her as very threatening. (*Id.* at 77). Hines never heard Tory threaten Matthews. (*Id.* at 75).

{¶ 4} Matthews's brother, Kevin, testified as a defense witness. He testified that Tory and Matthews were yelling and cursing at each other, but he did not recall Matthews threatening Tory. (*Id.* at 100-102). Kevin stated that Tory actually grabbed Matthews's arm. (*Id.* at 101). He then intervened to defuse the situation. (*Id.* at 101). Kevin also confirmed that Matthews recently had undergone a cesarean-section birth, implying that she would have been incapable of fighting. (*Id.* at 125). The final witness was Matthews's mother, Michelle Matlock. She testified that she was visiting Matthews, who recently had given birth. (*Id.* at 127). Matlock stated that she spoke with Matthews on the telephone while Matthews and Tory were arguing. (Id. at 128). Matlock advised Matthews to stop arguing and to call the police. (*Id.*). Matlock testified that she did not overhear any threats from anyone while she was on the telephone with Matthews. (*Id.* at 130). Specifically, she never heard Matthews threaten to do anything to Tory. (*Id.* at 131-132).

{¶ 5} Based on the evidence presented, the trial court found Matthews guilty of menacing and aggravated menacing. It imposed suspended jail sentences for both offenses and credited her for time already served. The trial court also imposed and suspended two fines, placed Matthews on probation for eighteen months, and imposed other conditions. (Tr. at 169-170; Doc. # 78). This appeal followed.[1]

{¶ 6} In her assignment of error, Matthews challenges the legal sufficiency and manifest weight of the evidence to sustain her aggravated menacing conviction. Matthews contends the prosecution failed to prove that Tory believed Matthews was going to cause

---

[1] We note that Matthews's appeal cannot be moot because she requested a stay of execution of sentence in the trial court. (Doc. # 81). Although the trial court denied a stay (Doc. # 81), the act of requesting a stay precludes a finding of mootness. *Cleveland Hts. v. Lewis,* 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 23-26.

Tory *serious* physical harm. Matthews makes two arguments in support. First, she cites portions of Tory's trial testimony to suggest that Tory feared some physical harm on the day in question but not serious physical harm. Second, she asserts that Tory's testimony about fearing for her life is belied by a recording of the 911 call to police, which does not reflect such fear.

{¶ 7} When a defendant challenges the sufficiency of the evidence, she is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist. 2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 8} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional

case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 9} With the foregoing standards in mind, we conclude that Matthews's aggravated menacing conviction is supported by legally sufficient evidence and is not against the weight of the evidence. The prosecution's evidence supports a finding that Matthews threatened to "bash" Tory's head into a wall and to "f*** her up." While making these threats, Matthews was enraged, standing nose to nose with Tory with her fists balled as if she wanted to fight. Tory testified that she was afraid and feared for her life. This evidence, if believed, is legally sufficient to establish that Matthews knowingly caused Tory to believe that Matthews would cause serious physical harm in violation of R.C. 2903.21(A), the aggravated menacing statute.

{¶ 10} For purposes of aggravated menacing, "serious physical harm" includes, inter alia, (1) physical harm that involves temporary, substantial incapacity, (2) physical harm that involves some permanent disfigurement or some temporary serious disfigurement, and (3) "physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5). Matthews's threat to "bash" Tory's head into a wall and to "f*** her up" reasonably could fit within any of these definitions of serious physical harm.

{¶ 11} Matthews's aggravated menacing conviction also is not against the manifest weight of the evidence. She cites portions of Tory's trial testimony to suggest that Tory feared some physical harm but not serious physical harm. We disagree. While admitting that Matthews never explicitly threatened to kill her, Tory insisted that she did fear for her life during the incident. On cross examination, Tory also testified that she still

feared Matthews but that she no longer feared (at the time of trial) that Matthews would kill her. (Tr. at 51-52). On redirect examination, Tory reiterated that Matthews had threatened to "bash [her] head in," not to "kill" her. (*Id.* at 59). Tory then added: "I believe she would do bodily harm. What bodily harm? I don't know because I don't know her. I don't know what she's capable of doing but I do know or believe she is a violent person." (*Id.*). Based on these last statements Matthews suggests the aggravated menacing conviction cannot stand because Tory claimed not to know what bodily harm Matthews might inflict. It appears, however, that Tory was talking about her existing fear and beliefs at the time of trial, not the time of the incident. In any event, Tory unambiguously testified at trial that she feared for her life at the time of the incident because Matthews had threatened to "bash" her head into a wall and to "f*** her up"—acts from which the trier of fact could reasonably have concluded Tory feared Matthews would cause serious physical harm within the meaning of the aggravated menacing statute.

{¶ 12} Matthews next contends Tory's claim about fearing for her life was controverted by an audio recording of the 911 call to police. Matthews notes Tory's failure to tell the 911 operator that she feared for her life. Matthews also asserts that Tory sounded too "calm" on the recording aside from when she could be heard arguing with the other parties. These arguments do not render Matthews's conviction against the manifest weight of the evidence. Tory's level of composure on the telephone and her failure to mention fearing for her life while speaking to the 911 operator were perhaps matters for the trial court to consider when assessing her credibility. The trial court acted well within its discretion as the trier of fact, however, in crediting the testimony of Tory and Hines over the testimony of Matthews's brother and mother. This is not an exceptional

case in which the evidence weighs heavily against Matthews's conviction.

{¶ 13} Based on the reasoning set forth above, we overrule Matthews's assignment of error and affirm the judgment of the Dayton Municipal Court.

. . . . . . . . . . . . .

WELBAUM, P. J., and TUCKER, J., concur.

Copies mailed to:

Andrew D. Sexton
J. David Turner
Hon. Deirdre E. Logan