[Cite as *State v. Moore*, 2020-Ohio-3805.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 109017 |
| P.J.M., | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-631624-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah Denney, Assistant Prosecuting Attorney, *for appellee*.

Christopher M. Kelley, *for appellant*.

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant P.M. appeals his misdemeanor conviction for violating a protection order. For the reasons that follow, we affirm.

{¶ 2} In 2018, P.M. was charged with violating a protection order in violation of R.C. 2919.27(A)(1), a felony of the third degree (Count 1), and two counts

of menacing by stalking in violation of R.C. 2903.211(A)(1), felonies of the fourth degree (Counts 2 and 3). The matter proceeded to a bench trial at which the following evidence was presented.

{¶ 3} D.M. was married to P.M. from 2005 to 2011. On May 16, 2017, D.M. filed for an ex parte civil protection order against P.M. with the Cuyahoga County Common Pleas Court, Domestic Relations Division. The court set a hearing for May 31, 2017. At that hearing, D.M. asked for a continuance so she could get an attorney; she and P.M. both signed a document that acknowledged that the ex parte civil protection order was in effect from May 16, 2017, until May 15, 2018, or until further order from the court. The order, which was entered into evidence, stated, in part, that P.M. was not to enter D.M.'s place of employment. The court set additional hearing dates, although from the record it appears that none of the subsequent hearing dates went forward.

{¶ 4} D.M. worked at Discount Drug Mart, where she had been an employee for six years, but was not working on July 14, 2017. Discount Drug Mart employee Carla Kuglin ("Kuglin") testified that P.M. came into the store that day to pay some bills; the store is able to take payments from customers on their utility bills. Kuglin explained that cashiers retrieve customer accounts by scanning the customer's store courtesy card or by inputting the customer's name or phone number into the system. According to Kuglin, as she was helping P.M. pay his bills, he asked about D.M. and whether she still worked at the store. At the time, Kuglin did not know who P.M. was and thought it was "weird" that he was asking about

D.M. Kuglin informed her store manager about the encounter. Kuglin identified herself and P.M. from surveillance video taken from the store; she also identified P.M. using his store courtesy card during the transaction. D.M. also identified P.M. in the store surveillance video.

{¶ 5} Deputy Michael Cyrus ("Deputy Cyrus") of the Cuyahoga County Sheriff's Department testified that he delivered the civil protection order to P.M. on May 17, 2017, and discussed the order with him. He testified that he had no specific recollection of the encounter but recorded the interaction on his log sheet. According to his log, Deputy Cyrus interacted with P.M. from 2:57 p.m. – 3:05 p.m. on May 17, 2017. Deputy Cyrus testified that he would have looked up P.M.'s photo before delivering the paperwork, reviewed the paperwork, and would have noticed if the paperwork was blank. If the paperwork had been blank, the deputy testified he would have taken corrective measures to ensure that he was not serving a respondent with a blank order. The deputy testified that when he delivers an order, the respondent is asked to sign something. The deputy admitted that some respondents refuse to sign, which he advises they are allowed to do, and if they refuse to sign, he notes it in his log. Deputy Cyrus identified a signature on the service slip that read "[P.M.]" and testified that it indicated to him that he delivered the protection order directly to P.M.: "They do. I mean, it's kind of — a lot of times people will say I'm not signing it, which they're not obligated to, and we advise them of that. If they do not sign it, we write on the jacket that we have, 'Refused to sign.'"

**{¶ 6}** Deputy Cyrus testified that if there had been anything that was abnormal about the encounter or if P.M. had refused to sign, he would have made a notation. The deputy further testified that prior to serving a notice, he reviews it because there can be errors in the document: "Well, prior to taking it out, we'll make sure that that doesn't have [errors] — like now, it's easier, because we actually physically process it, but sometimes when you get new staff in and that, you know, you really want to keep an eye on that, because that's when the errors will occur."

**{¶ 7}** Orville Strickland ("Strickland") testified that it was him, and not P.M., that went to Discount Drug Mart on July 14, 2017. Strickland testified that he went to the store to pay P.M.'s utility bills. When asked, Strickland said he did not recognize himself in the store surveillance video. Upon further questioning, Strickland said a person in the video "could be" or "may be" him, concluding, "I'm not sure." When asked yet again, Strickland stated, "Yes, it seems to be me." Strickland testified that he had paid bills for P.M. on other occasions, but he did not use a store courtesy card during the transaction and never asked the cashier about D.M.

**{¶ 8}** Clarence Stafford ("Stafford") testified that he was with P.M. on July 14, 2017. The two recorded videos of themselves buying car parts from a junk lot. It was the only day they had ever recorded themselves doing this activity. Stafford admitted that the video had been "modified" since it was created. He gave the video files to P.M. about a week after they recorded the videos. Although Stafford testified

that he was with P.M. "all day" on July 14, under cross-examination he identified different blocks throughout the day that he was not with P.M..

{¶ 9} Stafford testified that to his knowledge P.M. was good with computers. He gave P.M. the videos from July 14 but did not give a copy directly to the police or to P.M.'s attorney.

{¶ 10} Cleveland Police Detective John Freehoffer ("Detective Freehoffer") was assigned to the case. He testified that he met with Strickland after viewing the surveillance video from Discount Drug Mart. Strickland appeared to be about 80 pounds heavier than P.M. and walked with a cane. Detective Freehoffer testified that the person in the video did not use a cane. Detective Freehoffer further testified that in his 18 years in the domestic violence unit, he had never encountered someone who was delivered blank paperwork for a protection order. According to Detective Freehoffer, it is easy to obtain blank protection order paperwork because the forms can be downloaded online.

{¶ 11} Deana Robertson ("attorney Robertson") testified that she was P.M.'s former attorney for this case and P.M. brought to her office a sealed envelope, addressed to him that contained a blank protection order. Attorney Robertson was concerned that she witnessed P.M. open a letter containing a blank protection order so she asked the trial court to remove her from the case. On cross-examination, attorney Robertson testified that she did not represent P.M. in the domestic relations court where he allegedly stipulated to the temporary protection order and that she does not know where P.M. got the letter he brought to her office.

{¶ 12} After the close of all the evidence, the state asked the trial court to consider the lesser included offense of violating a protection order in violation of R.C. 2919.27(A)(1) for Count 1, which would remove the language that P.M. had violated a protection order or consent agreement while committing a felony offense, thereby reducing Count 1 to a misdemeanor of the first degree. As to Count 2, the state additionally asked the trial court to consider the lesser included offense of menacing by stalking in violation of R.C. 2903.211(A)(1), which would remove the furthermore specification that P.M. had trespassed on the land or premises where the victim lives, is employed, or attends school, thereby reducing Count 2 to a misdemeanor of the first degree.

{¶ 13} The court subsequently found P.M. not guilty of Counts 2 and 3 and guilty of Count 1 as follows: guilty of the lesser included offense in Count 1 of violating a protection order in violation of R.C. 2919.27(A)(1), a misdemeanor of the first degree. The trial court sentenced P.M. to one year of community control sanctions.

{¶ 14} It is from this conviction P.M. now appeals, raising the following assignments of error, which we review out of order:

I. Appellant's conviction is against the manifest weight of the evidence.

II. Appellant's conviction is not supported by sufficient evidence.

{¶ 15} We first address whether P.M.'s conviction was supported by sufficient evidence. P.M. makes two arguments to support his claim that his

conviction was not supported by sufficient evidence: (1) P.M. never received proper service of the restraining order and (2) P.M. did not violate the order because he was not at the Discount Drug Mart on July 14, 2017.

{¶ 16} Crim.R. 29(A) provides for an acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." A sufficiency challenge essentially argues that the evidence presented was inadequate to support the jury verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "'The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[A] conviction based on legally insufficient evidence constitutes a denial of due process." *Thompkins* at *id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). When reviewing a sufficiency-of-the-evidence claim, we review the evidence in a light most favorable to the prosecution. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996).

{¶ 17} P.M. was convicted of violating a protection order, in violation of R.C. 2919.27(A)(1), which provides that:

(A) No person shall recklessly violate the terms of any of the following:

(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code[.]

{¶ 18} Further, R.C. 2919.27(D) provides:

In a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued, and proves that the defendant recklessly violated the terms of the order or agreement.

{¶ 19} P.M.'s first contention is that the state failed to prove that he recklessly violated the protection order because P.M. was never personally served with the protection order. P.M. directs this court to *State v. Mohabir*, 5th Dist. Fairfield No. 04CA17, 2005-Ohio-78. In *Mohabir*, the defendant was convicted of violating the terms of a protection order. The order had been mailed to the jail where the defendant was being held but was not directly served on the defendant. The *Mohabir* court vacated the defendant's conviction, finding that due process required proof that the defendant be directly served with a copy of the protection order. *Id.* at ¶ 6.

{¶ 20} P.M. contends that he also was not properly served because he was served with a blank protection order. He further contends that he never entered Discount Drug Mart on July 14, 2017; it was Strickland who went to the store to pay his utility bills on his behalf.

{¶ 21} We are not persuaded by P.M.'s reliance on *Mohabir*. This is not a situation where P.M. was incarcerated and the order was mailed to the jail. In this case, while Deputy Cyrus did not have any specific recollection of serving P.M. with the order, the deputy testified to his normal procedure of serving protection orders,

that he would have noticed if the order was blank, and he spent eight minutes with P.M. explaining the order, because it is his practice to make sure respondents understand their order. Moreover, the service slip was signed "[P.M.]"

{¶ 22} In *State v. Rexrode*, 10th Dist. Franklin No. 17AP-873, 2018-Ohio-3634, the defendant was charged with violating a protection order, but claimed improper service. The deputy who served the defendant with the protection order had only a "faint" memory of service, but "testified to his standard routine and general habit in serving CPOs ['civil protection orders'] for over ten years," described how he explains the protection order and informs respondents of the hearing date. *Id.* at ¶ 12. The defendant also signed the protection order receipt. *Id.* at ¶ 10.

{¶ 23} Similarly, here, Deputy Cyrus did not have any specific recollection of serving P.M. but testified to his normal procedure of making sure the people he serves protection orders on understand the order. Further, the deputy's log indicated that he personally met with P.M. and spent eight minutes with him discussing the protection order. The service slip is signed "[P.M.]"

{¶ 24} Further, *Mohabir* was decided prior to the 2017 amendment to R.C. 2919.27(D).[1] The current version of R.C. 2919.27(D) provides that unperfected service of a protection order does not preclude a prosecution for a violation of R.C.

---

[1]In 2017, the Ohio Legislature amended R.C. 2919.27(D). *See* PROTECTION ORDERS — VIOLATION, 2017 Ohio Laws File 10 (Sub. S.B. 7) ("The amendments made by this act to division (D) of section 2919.27 of the Revised Code are intended to supersede the holding of the Ohio Supreme Court in *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972, so that unperfected service of a protection order or consent agreement does not preclude a prosecution for a violation of division (A) of that section.").

2919.27(A) so long as the prosecution can show that the defendant was shown the protection order or a copy of it or a judge, magistrate, or law enforcement officer informed the defendant that a protection order had been issued and proves that the defendant recklessly violated the terms of the order. R.C. 2919.27(D). Thus, the state did not have to prove proper service; proper service is not an element of the offense pursuant to R.C. 2919.27(A).

{¶ 25} With respect to P.M.'s argument that he never entered Discount Drug Mart on July 14, 2017, Kuglin testified that she helped P.M. on July 14, 2017. Kuglin and P.M. were both in the surveillance video, and Kuglin identified P.M. in court as the person who inquired about D.M. D.M. also identified P.M. from the surveillance video.

{¶ 26} With respect to P.M.'s insufficiency of the evidence argument, we find that when viewing the evidence most strongly in favor of the prosecution, the state presented sufficient evidence that P.M. recklessly violated the terms of the protection order by entering D.M.'s place of employment and knew about the protection order because he signed an acknowledgment of the order in the domestic relations court and received personal service of the order, in violation of R.C. 2919.27(A)(1).

{¶ 27} The second assignment of error is overruled.

{¶ 28} In the first assignment of error, P.M. contends that his conviction was against the manifest weight of the evidence.

{¶ 29} The criminal manifest weight-of-the-evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins,* 78 Ohio St.3d at 386, 678 N.E.2d 541. Under the manifest weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's? *Wilson* at *id.* Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387; *State v. Johnson*, 88 Ohio St.3d 95, 723 N.E.2d 1054 (2000).

{¶ 30} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Wilson* at *id.*, quoting *Thompkins* at *id.* Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at *id.*

{¶ 31} Ultimately, the trial court had to decide whether to believe the account of the incident given at trial by the state's witnesses or by P.M.'s witnesses. It was within the province of the trial court, as the trier of fact in this case, to resolve the conflicts in the testimony. In resolving this conflict, the court had the opportunity to view the store's surveillance video and assess witness credibility. In view of its verdict, the court did not fully believe P.M.'s witnesses, but it also

acquitted him of Counts 2 and 3 and found him guilty of a lesser-included offense of Count 1.

{¶ 32} Upon reviewing the entire record, we find that the trial court's resolution of the competing testimony and evidence was not against the manifest weight of the evidence. This not an exceptional case in which the evidence weighs heavily against the conviction.

{¶ 33} The first assignment of error is overruled.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and

PATRICIA ANN BLACKMON, J., CONCUR