[Cite as *State v. Edwards*, 2026-Ohio-141.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30448 |
| Appellee | : | |
| | : | Trial Court Case Nos. CRB 2402097 A |
| v. | : | & B |
| | : | |
| CHRISTOPHER A. EDWARDS | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on January 16, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

LEWIS, J., and HUFFMAN, J., concur.

GARY C. SCHAENGOLD, Attorney for Appellant
ERIK R. BLAINE, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Christopher A. Edwards appeals from his conviction for violating a protection order, which followed a bench trial in the Vandalia Municipal Court. He claims that his conviction was based on insufficient evidence and against the manifest weight of the evidence. For the following reasons, the trial court's judgment is affirmed.

**I. Facts and Procedural History**

{¶ 2} Edwards and the complainant, A.L., were in a relationship and lived together for approximately two years. The relationship ended in July 2024. After the two separated, Edwards came to her work. He also broke into her home, breaking her windows. A.L. sought and obtained an ex parte protection order against him in Miami County. Edwards participated in the final protection order hearing on August 26, 2024, and he was served with the final protection order the same day. The order prohibited Edwards from contacting A.L. or being within 500 feet of her, among other things.

{¶ 3} Edwards did not stay away from A.L. On October 11, 2024, A.L. saw Edwards stopped along the side of the highway as she was leaving the nearby restaurant where she worked. Edwards left as soon as he saw her.

{¶ 4} At approximately 9:40 a.m. on October 31, 2024, A.L. again saw Edwards as she was heading to work. While driving along State Route 49 near her home, A.L. observed Edwards on a motorcycle at a gas station, waiting to pull out onto the road. After A.L. passed by, Edwards turned onto State Route 49 a few cars behind her and followed her onto

eastbound Interstate 70. He then maneuvered so that he was traveling behind A.L. After the highway split into three lanes, A.L. took the middle lane. Edwards pulled up beside her in the right lane, blew her a kiss, sped off, and then took the next exit. A.L. took a video of Edwards behind her and ahead of her on Interstate 70. That day, she reported Edwards's conduct to the Ohio State Highway Patrol.

{¶ 5} A.L. spoke with Troopers Jason Whitner and Russell Davis on November 15, 2024. During her interview, she told them that Edwards had contacted one of her co-workers by text on November 11, 2024.

{¶ 6} On November 20, 2024, Edwards was charged with violating a protection order and menacing by stalking, both first-degree misdemeanors. He pled not guilty to the charges.

{¶ 7} The matter proceeded to a bench trial on March 19, 2025. Before trial began, the State indicated, and the defense agreed, that the protection order case would be based on the October 31 incident only and that the State would not go forward on the menacing by stalking charge. The State then presented the testimony of two witnesses (A.L. and Trooper Whitner) and two exhibits (the final protection order and A.L.'s video). Edwards offered no evidence in his defense. After considering the evidence, the trial court found Edwards guilty of violating a protection order and ordered a presentence investigation.

{¶ 8} Sentencing was held on April 9, 2025. After hearing from Edwards and A.L., the trial court imposed 180 days in jail with 170 days suspended on the condition that Edwards have no contact with A.L. Edwards was given credit for one day already served, and the court permitted him to serve the remaining nine days over three consecutive weekends. The court placed Edwards on two years of community control and ordered him to pay a $150 fine and court costs.

3

**{¶ 9}** Edwards appeals from his conviction, raising two assignments of error. We address them together.

## II. Sufficiency and Manifest Weight of the Evidence

**{¶ 10}** In his assignments of error, Edwards claims that his conviction for violating a protection order was based on insufficient evidence and against the manifest weight of the evidence. He argues that the State failed to prove that he was served with the protection order and that he was the individual on the motorcycle on October 31, 2024.

### A. Standards of Review

**{¶ 11}** "When a defendant challenges the sufficiency of the evidence, [he] is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2018-Ohio-2424, ¶ 7 (2d Dist.). "'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id*., quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997), citing *Jenks* at 273.

**{¶ 12}** In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.). When evaluating whether a conviction was against the manifest weight of the evidence, the

4

appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

### B. Service of the Protection Order

{¶ 13} Edwards was convicted of violating R.C. 2919.27(A), which requires the State to prove that he recklessly violated the terms of a protection order. He asserts, citing *State v. Terrell*, 2014-Ohio-4344 (2d Dist.), that the State was also required to prove that he was properly served with the protection order prior to the conduct for which he was charged.

{¶ 14} In *Terrell*, we reversed the defendant's conviction for violating a protection order where the State failed to demonstrate that he had been served with the final protection order prior to engaging in conduct that violated the order. In doing so, we followed *State v. Smith*, 2013-Ohio-1698, which held that "[t]o sustain a conviction for a violation of a protection order pursuant to R.C. 2919.27(A)(2), the state must establish, beyond a reasonable doubt, that it served the defendant with the order before the alleged violation." *Id*. at syllabus.

{¶ 15} R.C. 2919.27 was amended to supersede the holding of *Smith*. *See* 2017 Sub.S.B. 7; *State v. P.J.M.*, 2020-Ohio-3805, ¶ 24, fn. 1 (8th Dist.). Since September 27, 2017, R.C. 2919.27(D) has provided that "[i]n a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the

protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued, and proves that the defendant recklessly violated the terms of the order or agreement."

{¶ 16} Here, the evidence supported the conclusions that Edwards was informed of the protection order and that he was served with it before October 31, 2024. Initially, it appears that defense counsel stipulated that Edwards had been served. Defense counsel told the court during his opening statement that Edwards "acknowledge[d] being served with the protection order" but that he was challenging the allegation that he had violated it. When the prosector questioned A.L. about the conduct that precipitated the protection order, defense counsel interrupted, stating that "[w]e will stipulate to the protection report." The trial court could have reasonably interpreted the stipulation to be related to both the existence and the service of the final protection order.

{¶ 17} Regardless, A.L. testified that Edwards was initially served with an ex parte protection order, that he participated in the final hearing on August 26, 2024, and that he was aware that a final protection order was going to be issued. The final protection order was filed at 9:15 a.m. on August 26, 2024. A.L. stated, and the order itself reflects, that Edwards was served with the order on the same day. On this record, the trial court could have reasonably concluded that Edwards was both informed of and served with the final protection order before October 31, 2024.

### C. The October 31, 2024 Incident

{¶ 18} Edwards further claims that A.L.'s "vague testimony" did not establish that he was the individual on the motorcycle on October 31, 2024. He emphasizes that the

motorcycle rider wore a helmet that obscured his face and that A.L. acknowledged that neither the motorcycle nor the helmet belonged to Edwards.

{¶ 19} At trial, A.L. identified Edwards as the individual who followed her and gestured to her from a motorcycle on October 31, 2024. Although she admittedly did not see Edwards's face during the encounter and she did not recognize the helmet that he was wearing, she said that "everything else was the same." She indicated that Edwards always wore the same gloves and shoes and that she had recognized them. She further testified, "I know his shoes. I know his pants. I know . . . the way he looks on a bike." On cross-examination, she added that she knew "his body" and "his style of riding." A.L. explained on redirect examination that she had ridden behind Edwards "quite a few times" and knew his stance. She stated that "with the way he rides, it's very distinguishable." A.L. thought that Edwards was riding his girlfriend's motorcycle; she had seen photographs of it.

{¶ 20} A.L.'s description of the encounter buttressed her identification of Edwards. A.L. testified that she always left her house for work at 9:30 a.m., and that she saw Edwards at a gas station near her home, waiting to turn onto State Route 49, which was part of her route. She said that once they were on Interstate 70, the motorcycle first got behind her. The motorcycle then pulled beside her, and the rider blew her a kiss, sped away, and took the next exit. The trial court could have reasonably concluded that the motorcyclist's actions were consistent with the behavior of someone who knew A.L.—that is, of Edwards specifically—rather than of a stranger. A.L.'s testimony was sufficient to prove that Edwards was the person who followed her from the gas station and gestured to her on October 31, 2024.

{¶ 21} Although Trooper Whitner did not witness the October 31 encounter, he testified that he had viewed the video that A.L. had taken. When asked on cross-examination

7

whether there were many people who "look like that and drive on a motorcycle," the trooper responded affirmatively. Whitner further testified, however, that he had never met Edwards and would not know whether the motorcyclist was him.

{¶ 22} It was the province of the trial court, as the trier of fact, to assess the witnesses' credibility and determine whether the State had proven beyond a reasonable doubt that Edwards had violated the protection order. In reaching its verdict, the court was free to believe all, part, or none of the witnesses' testimony. *State v. Peterson*, 2021-Ohio-3947, ¶ 27 (2d Dist.). The trial court found A.L. to be a "very credible witness" and stated that it believed her. With the record before us, we cannot conclude that the trial court lost its way when it found Edwards guilty of violating a protection order.

{¶ 23} Edwards's conviction for violating a protection order was based on sufficient evidence and was not against the manifest weight of the evidence. Accordingly, his assignments of error are overruled.

### III. Conclusion

{¶ 24} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

LEWIS, J., and HUFFMAN, J., concur.