[Cite as *State v. Edwards*, 2024-Ohio-5980.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

DANIEL EDWARDS,

    DEFENDANT-APPELLANT.

CASE NO. 1-23-74

**O P I N I O N**

Appeal from Allen County Common Pleas Court
Trial Court No. CR2023 0140

**Judgment Affirmed**

**Date of Decision: December 23, 2024**

APPEARANCES:

   *Chima R. Ekeh* **for Appellant**

   *John R. Willamowski, Jr.* **for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, Daniel Edwards ("Edwards"), appeals the judgment of conviction and sentence entered against him in the Allen County Common Pleas Court, following a jury trial that resulted in Edwards being found guilty of multiple felony offenses. For the reasons set forth below, we affirm.

*Procedural History*

{¶2} This case originated on June 15, 2023, when an Allen County grand jury returned a six-count indictment against Edwards, charging him as follows: Count 1 – Burglary, a second-degree felony in violation of R.C. 2911.12(A)(1); Count 2 – Violating a Protection Order, a third-degree felony in violation of R.C. 2919.27(A)(1) and (B)(4); Count 3 – Violating a Protection Order, a third-degree felony in violation of R.C. 2919.27(A)(1) and (B)(4); Count 4 – Violating a Protection Order, a fifth-degree felony in violation of R.C. 2919.27(A)(1) and (B)(3)(b); Count 5 – Burglary, a second-degree felony in violation of R.C. 2911.12(A)(1); and Count 6 – Violating a Protection Order, a third-degree felony in violation of R.C. 2919.27(A)(1) and (B)(4).

{¶3} On June 22, 2023, an arraignment was held and Edwards entered pleas of not guilty as to all counts of the indictment.

{¶4} On October 20, 2023, a jury trial commenced in the case. During the two-day trial, the prosecution presented the testimony of six witnesses and introduced a number of exhibits. After the State rested its case, the defense opted

to not present evidence. Following closing arguments of counsel and instructions of law by the trial court, the jury received the case for deliberation on October 31, 2023 at 4:24 p.m. On that same date, at 5:44 p.m., the jury returned verdicts finding Edwards guilty as charged in all counts of the indictment. The trial court accepted the verdicts, discharged the jury, and ordered an updated presentence investigation.

{¶5} On November 21, 2023, a sentencing hearing was held. As a preliminary matter, the trial court found that Counts 1 and 2 and Counts 1 and 3 merged for purposes of sentencing, and the prosecution elected to proceed to sentencing on Count 1. Edwards was then sentenced on Counts 1, 4, 5, and 6 to an aggregate sentence of a minimum of six years and six months in prison up to a potential maximum of nine years in prison.

{¶6} On November 29, 2023, Edwards filed the instant appeal.

*Relevant Facts*

{¶7} This case stemmed from two incidents that took place on April 20, 2023, at 561 Prospect in Lima, where Edwards' mother, Patricia Wilkerson ("Patricia"), lived with two of her other sons, Dale Edwards ("Dale") and Charles Wilkerson ("Charles"). The first incident occurred at around 2:00 a.m. and the second incident occurred around 12:30 p.m. On both of those occasions, Edwards showed up, unwelcome, at the house on Prospect, where Patricia and Charles were present. Approximately a month prior, Patricia and Charles had each petitioned for

and obtained a domestic violence civil protection order relating to Edwards in the Allen County Court of Common Pleas, pursuant to R.C. 3113.31.

{¶8} Patricia and Charles both testified at trial in this case about the two incidents on April 20, 2023, as did the Lima Police Department officers who responded to 561 Prospect as a result of those incidents, and the detective who was assigned to conduct a follow-up investigation.

{¶9} The evidence presented at trial reflected that on April 20, 2023, at approximately 2:00 a.m., Patricia and Charles were resting in the first-floor living room of Patricia's home on Prospect. At that time, they first heard a loud noise and they then heard Edwards on the screened-in front porch of the house. Following that, Edwards cracked open the front door leading from the porch to the living room and spoke to his mother through the cracked door. Edwards asked for a phone charger, his mother told him no, and then Edwards left the premises. As a result, Charles called the Lima Police Department. Patrolman Jalen Bagley responded to 561 Prospect but could not locate Edwards in the area. Bagley took a report and photographed damage to the door of the screened porch, where the screen had been pushed in.

{¶10} Later that same date, at approximately 12:30 p.m., Edwards returned to 561 Prospect. On that occasion, Edwards pushed open the wood door leading from the screened porch to the living room, breaking the door chain in the process. Edwards entered the living room, where Patricia and Charles were still located, with

Patricia in a recliner and Charles on the couch. Edwards said something about his phone being stolen, grabbed Patricia's cell phone off the dining room table, took the phone without permission, and left the house. Patricia then called the Lima Police Department. Patrol officers Kylie Archer and Roger Lybarger responded to 561 Prospect. Lybarger took a report from Patricia and photographed damage to the front door frame where the chain had been pulled off the frame of the door. Archer checked the area in her patrol cruiser and located Edwards walking in a nearby alley. Edwards failed to heed Patrolman Archer's command to stop, and took off running. Following a brief foot pursuit, Archer lost sight of Edwards. Patrolman Lybarger then assisted Patrolman Archer in searching for Edwards. Shortly thereafter, Lybarger located Edwards near the house and took Edwards into custody. Edwards had Patricia's cell phone in his possession, which was returned to Patricia at that time.

{¶11} At trial, Charles identified State's Exhibit 2 as being a copy of the protection order that he had obtained against Edwards. Similarly, Patricia identified State's Exhibit 6 as a copy of the protection order that she had obtained against Edwards. Finally, the parties stipulated, relative to Count 4, that Edwards had previously been convicted of two violations of R.C. 2903.22 that involved Charles Wilkerson.

*Claims on Appeal*

{¶12} In this appeal, Edwards raises four assignments of error for our review.

**First Assignment of Error**

**Appellant's convictions for Count II, III, IV, and VI were against the manifest weight of the evidence.**

**Second Assignment of Error**

**Appellant's convictions for Count II, III, IV and VI were not supported by sufficient evidence.**

**Third Assignment of Error**

**The trial court erred by allowing a modification of the original return of service and admission of the same into evidence.**

**Fourth Assignment of Error**

**Appellant's conviction for Count I was against the manifest weight of the evidence.**

{¶13} For purposes of analytical clarity, we elect to address the assignments of error out of the order in which they are raised.

*Third Assignment of Error*

{¶14} In the third assignment of error, Edwards asserts that the trial court abused its discretion by allowing the Allen County Clerk of Courts to amend the returns of service relating to the prior service on Edwards of the two protection orders that were elemental in the crimes with which Edwards was charged and convicted. While not directly asserted in the argument made in support of that assignment of error, Edwards appears to also suggest that the trial court erred in

admitting into evidence State's Exhibits 35 and 36, being the amended returns of service about which Edwards complains.

{¶15} By way of relevant background, the record reflects the following with regard to the two civil protection orders at issue in this case.

{¶16} During the first day of trial, prosecution witness Charles Wilkerson identified State's Exhibit 2 as being a copy of the protection order that he obtained on April 4, 2023 against Edwards. Similarly, prosecution witness Patricia Wilkerson identified State's Exhibit 6 as a copy of the protection order that she obtained on April 4, 2023 against Edwards. Both of those protection orders had been issued by the Allen County Common Pleas Court.

{¶17} At the start of the second day of trial and prior to the jury being brought into the courtroom, defense counsel raised a partial objection to State's Exhibits 2 and 6, noting that the second pages of those exhibits contained findings of fact made by the court and upon which the protection orders were based. Defense counsel requested that the portion of each of exhibit reciting the findings of fact be redacted before those exhibits were published to the jury.

{¶18} As the court and counsel were discussing that objection and the potential redaction to be made, the prosecutor noted that he intended to display the second pages of State's Exhibits 2 and 6 with an upcoming witness because information on those pages related to State's Exhibits 33 and 34, which had not yet been identified, but which the prosecutor indicated were the returns of service

relating to Exhibits 2 and 6. The prosecutor explained that Edwards had not been served with the protection orders until after the full hearings on the protection orders in April, but that the second pages of State's Exhibits 2 and 6 referenced the fact that an ex parte order of protection had been issued in each case in March. The trial court asked to see State's Exhibits 33 and 34 and, after a quick review, noted that there appeared to be an error in the dates on those returns of service, as Exhibits 33 and 34 indicated that the sheriff's office had served the full protection orders on Edwards on April 5, 2023 after receiving the full protection orders for service on March 22, 2023. The trial court noted that while the sheriff's office had likely received the ex parte orders for service on March 22nd, it would have been impossible for the sheriff's office to have received the final and full protection orders (State's Exhibits 2 and 6) on March 22nd, as the hearing that resulted in those orders being issued did not take place until April 4th.

{¶19} Defense counsel then noted that his objection as to State's Exhibits 2 and 6 was primarily focused on the specific findings of fact contained in those exhibits, and so the trial court ordered that the sections containing the findings of fact be redacted in State's Exhibits 2 and 6. Upon further inquiry by the trial court, defense counsel indicated that the proposed redaction would satisfy the defense's request.

{¶20} The jury was then brought into the courtroom and the presentation of evidence resumed, with the prosecution calling Lima Police Department Detective

Matt Boss to the stand. During his testimony, Detective Boss identified State's Exhibits 2 and 6 as copies of the protection orders he had gathered as potential evidence, after being assigned the case for investigation and being made aware that Charles Wilkerson and Patricia Wilkerson each had an active protection order on file against Edwards. Detective Boss was then asked whether he had determined if Edwards had been served with those protection orders, and Boss identified State's Exhibits 33 and 34 as being certified copies of the returns of service relating to State's Exhibits 2 and 6, respectively. Boss noted that the returns of service reflected that Edwards had been personally served with the two protection orders on April 5, 2023.

{¶21} On cross-examination, Boss was asked about the apparent discrepancy in the dates set forth on State's Exhibits 33 and 34, with defense counsel noting that the returns of service indicated the sheriff's office had received the protection orders for service on March 22, 2023, but that the protection orders had not actually been issued until April 4, 2023. In response, Boss noted that there had been ex parte protection orders issued by the court on March 22, 2023. Before Boss could further address the question posed about the dates on the returns of service, the trial court asked counsel to approach and an off-record discussion was held at the bench. Upon resuming cross-examination of Detective Boss, defense counsel moved on to a different line of questioning about the case.

**{¶22}** At the conclusion of that cross-examination, the jury was excused for a lunch break. After the jury left the courtroom, the trial court stated that it wanted the record to reflect what had occurred during the sidebar. At that time, the trial court noted that it was clear, based on all of the docketed information in the Clerk of Court's files relating to the two protection order cases, that the clerk's office computer system had erroneously auto-generated the date of March 22, 2023 on the returns of service for the full protection orders. The court noted that the records reflected that March 22, 2023 was the date that the sheriff's office received the initial ex parte orders to be served on Edwards, and that the same date was then erroneously inserted into the returns of service relating to the second protection orders that were issued after a full hearing on April 4, 2023. The court noted that the parties would have been hampered in discovering that information because it was not accessible on the clerk's document website and because of the original ex parte nature of the protection order cases. The court then offered counsel time to visit the Clerk of Court's office to review the files in person, and adjourned the matter until after the extended lunch break.

**{¶23}** After the lunch recess, the court went back on record with counsel outside the presence of the jury. At that time, the prosecutor indicated that he had obtained certified copies of the initial ex parte protection orders in the cases involving Charles Wilkerson and Patricia Wilkerson, along with certified copies of

the returns of service for those ex parte orders, and that copies of those documents had just been provided to defense counsel.

{¶24} Defense counsel then stated that his cross-examination of Detective Boss about the returns of service was based on a belief that perhaps Edwards had been served with the ex parte orders but had not been served with the full orders. Defense counsel indicated that he terminated that line of questioning once he became aware that it was factually inaccurate. Defense counsel did lodge an objection to the newly obtained documents relating to the ex parte orders on the basis that they had not been provided in discovery prior to trial, asserting that Edwards' decision to go to trial would have perhaps been different had the defense had all of the paperwork.

{¶25} In response, the trial court noted that the documents relating to the ex parte orders were not something that the prosecution had previously had in its possession, although the information could have been obtained by the State. The trial court found that the discovery violation was not a willful one and ruled that, as a less-restrictive sanction, the court would permit a continuance for the defense to review the documents. At that time, defense counsel stated that he had reviewed the documents and that, after discussing the matter with co-counsel and with Edwards, the defense was comfortable with moving forward with the trial without a continuance. After the trial court reviewed with counsel several other legal and procedural matters unrelated to State's Exhibits 33 and 34, another recess was taken.

**{¶26}** After that recess, the trial court went back on record with counsel, again outside the presence of the jury. At that time, the trial court noted that revised jury instructions had been emailed to counsel and then stated:

> But I also wanted to note that to make the record accurate the Clerk of Courts was contacted about what the problem was and she has now and when I say she I'm talking about the elected Clerk of Courts, Jennifer McBride, she has been in contact with the sheriff's office and she now has a filed a docketed amended return of service order orders in both DV2023 0045 and DV2023 0049. The 45 relating to Patricia Wilkerson, the 49 relating to Charles Wilkerson to accurately reflect that those civil protection orders were received on April 4th respectively. The different times are noted and when they were then served on Mr. Edwards. So now the accurate reflection from the court as to when those things were served, but they are file stamped with todays [*sic*] date and they are docketed. They both happen to be number seven, docket numbers in those cases and my understanding is she provided certified copies to both parties, correct [assistant prosecutor] Mr. Thines?

(Tr., 314).

**{¶27}** Upon inquiry by the trial court, both counsel for the State of Ohio and counsel for the defense indicated that they had been provided with certified copies of the amended returns of service referenced by the court.

**{¶28}** The following exchange then occurred:

> Mr. Sturgill [defense counsel]: Just for the record, identical objection under Criminal Rule 16 to this that again as of eight a.m. yesterday morning the evidence provided had no proof of service. We received that. Since then we have gotten all of this new information and now an amended filed thing that was literally amended today and that has had a great change in the State's strength of their case and I respect the courts [*sic*] earlier ruling. I just wanted to make sure this was included in that and if the question is do I need more time to review this then it should also know if the court is inclined to allow the State to use it.

-12-

The Court: Okay. Mr. Sturgill, I just want to make clear for the record and I'm not asking your client to testify or make any statements. Are you taking issue with the accuracy of what the Clerk of Courts is providing for service?

Mr. Sturgill:  No, your honor.

The Court:  Or just the timing of it?

Mr. Sturgill:  Just the timing of the stuff and its effect on the way this is proceeding.

The Court:  On your case, absolutely.  Okay.  I understand that, but again, in light of the other explanations this is now the clerical fixing of those explanations.  So with that anything further Mr. Sturgill?

Mr. Sturgill:  No, your honor, thank you.

(Tr., 315-316).

**{¶29}** The jury was then brought into the courtroom and the presentation of evidence resumed with redirect-examination of Detective Boss by the State of Ohio. During that redirect-examination, Detective Boss again identified State's Exhibits 33 and 34 as the original returns of service of the two full civil protection orders at issue.  Boss then identified State's Exhibits 35 and 36 as being amended returns of service, with Exhibit 35 serving to amend Exhibit 33 and Exhibit 36 serving to amend Exhibit 34.  Boss testified that there had been some sort of clerical error in the original returns of service as to the date that the protections orders had been received to be served, and that the amended returns had been corrected to reflect that it had been April 4, 2023 when the sheriff's office had received the protection orders for service, which was then accomplished on April 5th, as had been reflected

in the original returns. During recross-examination, Detective Boss acknowledged that the amended returns of service, being State's Exhibits 35 and 36, had just been filed on that date, after Detective Boss had been asked about the dates reflected in State's Exhibits 33 and 34 during his initial cross-examination.

**{¶30}** Following the conclusion of Detective Boss's testimony, the State of Ohio indicated it had no further witnesses. The jury was excused from the courtroom and the prosecution moved for admission of its various exhibits, including State's Exhibits 35 and 36. The defense objected to State's Exhibits 35 and 36 on the basis of a discovery violation. The trial court ruled that State's Exhibits 35 and 36 would be admitted over that objection. The State then rested its case.

**{¶31}** On appeal, as noted above, Edwards argues that the trial court erred in permitting the returns of service to be amended by the Clerk of Courts and in then allowing those amended returns, State's Exhibits 35 and 36, to be admitted into evidence.

**{¶32}** As Edwards correctly notes in his merit brief, "'[a] trial court has broad discretion in the admission and exclusion of evidence. Unless the trial court has clearly abused its discretion, an appellate court should not interfere in its determination.'" *State v. Thomas*, 2024-Ohio-1534, ¶ 26 (3d Dist.), quoting *State v. Apanovitch,* 33 Ohio St.3d 19, 25 (1987). An abuse of discretion implies that the

trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**{¶33}** However, beyond noting that standard of review with regard to the third assignment of error, Edwards' merit brief contains no analysis of his claim of error concerning State's Exhibits 35 and 36, and Edwards cites no legal authority in support of his claim.

**{¶34}** It is the duty of the appellant to demonstrate assigned error through an argument supported by citations to legal authority and facts in the record. In *State v. Welling*, 2023-Ohio-3214, this Court elaborated on that requirement as follows:

> "'[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal.'" *State v. Costell,* 3d Dist. Union No. 14–15–11, 2016-Ohio-3386, ¶ 86, quoting *State v. Stelzer,* 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7. If an argument exists that can support an assignment of error, it is not this Court's duty to root it out. *State v. Shanklin,* 3d Dist. Union No. 14–13–23, 2014-Ohio-5624, ¶ 31, citing *State v. Raber,*189 Ohio App.3d 396, 2010-Ohio-4066, ¶ 30 (9th Dist.).
>
> App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 16(A)(7) requires that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

*Id.,* at ¶¶ 6-7.

**{¶35}** Pursuant to the appellate rules cited above, since we are not required to address arguments that have not been sufficiently presented for review or supported by proper authority, we will not conduct a detailed legal analysis of Edwards' unsupported claim in the third assignment of error.

**{¶36}** However, we do note that, contrary to Edwards' assertion that it was the trial court who contacted the Clerk of Courts about the error in the original returns of service, the record does not reflect who brought the matter to the attention of the clerk's office. While State's Exhibits 35 and 36 were generated and filed by the Clerk of Courts during the trial, those documents were promptly provided to the defense immediately after the documents were docketed. More importantly, the accuracy of the information in the amended returns of service, being the exhibits about which Edwards now complains, was not contested by Edwards at the trial level, nor does Edwards suggest on appeal that the amendment of those returns was not an accurate reflection of the dates involved in the service of the protection orders at issue. Accordingly, we fail to see how material prejudice resulted to Edwards as a result of State's Exhibits 35 and 36 having been created and filed during the trial and then introduced into evidence, and the trial court did not abuse its discretion in the admission of Exhibits 35 and 36.

**{¶37}** For all of the reasons stated, the third assignment of error is overruled.

*First and Second Assignments of Error*

**{¶38}** In the first and second assignments of error, which we shall jointly address, Edwards challenges the evidentiary basis for the jury's findings that he was guilty of the charges in Counts 2, 3, 4, and 6. In the first assignment of error, Edwards argues that his convictions on Counts 2, 3, 4, and 6 were against the manifest weight of the evidence. In the second assignment of error, Edwards contends that the State presented insufficient evidence in support of the crimes charged in Counts 2, 3, 4, and 6.

**{¶39}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St. 3d 259 (1991), paragraph two of the syllabus. Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

**{¶40}** By contrast, when reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387

-17-

(1997). In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

**{¶41}** As an initial matter, we note that we need not consider Edwards' claims with regard to Counts 2 and 3. "'[W]hen counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency [or weight] of the evidence on the count that is subject to merger because any error would be harmless' beyond a reasonable doubt." *State v. Sheldon*, 2019-Ohio-4123, ¶ 11 (3d Dist.), quoting *State v. Ramos*, 2016-Ohio-7685, ¶ 14 (8th Dist). While Edwards was found guilty on all six counts of the indictment, the trial court found prior to sentencing that Counts 1 and 2 and Counts 1 and 3 were allied offenses and therefore merged for purposes of sentencing. As a result, the prosecution elected to proceed to sentencing on Count 1 and Edwards was then sentenced only on Counts 1, 4, 5, and 6. Accordingly, Edwards was not ultimately

"convicted" of the offenses charged in Counts 2 and 3 because the trial court merged those offenses with Count 1 for sentencing purposes. *Sheldon*, *supra*, at ¶ 12, quoting *Ramos* at ¶ 16 ("a 'conviction' requires both a finding of guilt and a sentence."). Accordingly, we shall address Edwards manifest weight claims and sufficiency of the evidence claims here only as to Counts 4 and 6.

{¶42} In Count 4 of the indictment, Edwards was charged with Violating a Protection Order in violation of R.C. 2919.27(A)(1) and (B)(3)(b). R.C. 2919.27(A)(1) provides in relevant part that "[n]o person shall recklessly violate the terms of * * * [a] protection ordered issued * * * pursuant to section 2919.26 or 3113.31 of the Revised Code[.]" Pursuant to R.C. 2919.27(B)(3)(b), as was further alleged in Count 4, "violating a protection order is a felony of the fifth degree if the offender previously has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for * * * two or more violations of section 2903.21, 2903.211, 2903.22, or 2911.211 of the Revised Code, or any combination of those offenses" involving the same person who is the subject of the protection order at issue.

{¶43} Count 6 of the indictment charged Edwards with Violating a Protection Order in violation of R.C. 2919.27(A)(1) and (B)(4). Again, R.C. 2919.27(A)(1) provides in relevant part that "[n]o person shall recklessly violate the terms of * * * [a] protection ordered issued * * * pursuant to section 2919.26 or 3113.31 of the Revised Code[.]" Pursuant to R.C. 2919.27(B)(4), as was further

alleged in Count 6, Violating a Protection Order is a felony of the third degree "[i]f the offender violates a protection order * * * while committing a felony offense."

**{¶44}** In *State v. Smith*, 2013-Ohio-1698, the Supreme Court of Ohio held that to sustain a conviction for a violation of a protection order pursuant to R.C. 2919.27, the State must establish, beyond a reasonable doubt, that the defendant had been served with the order prior to the alleged violation. Then, in 2017, R.C. 2919.27 was amended to provide:

> (D) In a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued, and proves that the defendant recklessly violated the terms of the order or agreement.

In the instant appeal, Edwards' manifest weight and sufficiency of the evidence claims regarding Counts 4 and 6 focus strictly on the evidence relating to whether he had been served with, or otherwise shown or informed about, the protection orders at issue in those counts. Edwards contends that the prosecution failed to prove that he was served with the final civil protection orders or that he was provided notice of those orders via one of the methods set forth in R.C. 2919.27(D).

**{¶45}** However, Edwards' arguments as to the evidence establishing service and/or notice of the protection orders completely disregard State's Exhibits 35 and 36, the amended returns of service discussed in the third assignment of error, *supra*.

-20-

Contrary to Edwards' claims in the first and second assignments of error, the prosecution at trial presented evidence of both protection orders at issue. Then, through State's Exhibits 33, 34, 35, and 36, the State of Ohio presented certified copies of the court documents that, when considered together, more than adequately established under the legal standards of review set forth above that Edwards had been served with the protection orders on April 5, 2023 and, therefore, such service had been perfected prior to the offenses at issue in this case, which occurred on April 20, 2023.

{¶46} The first and second assignments of error are overruled.

*Fourth Assignment of Error*

{¶47} In the fourth assignment of error, Edwards asserts that his conviction on Count 1 was against the manifest weight of the evidence.

{¶48} The standard of review applicable to manifest-weight challenges was set forth above in the analysis of the first and second assignments of error and is incorporated here by reference.

{¶49} In Count 1, Edwards was charged with, and found guilty of, Burglary in violation of R.C. 2911.12(A)(1). R.C. 2911.12(A)(1) provides that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to

-21-

commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense."

**{¶50}** As presented to the jury at trial, Count 1 related to Edwards' trespass at his mother's home in the early morning hours of April 20, 2023. With regard to that incident, the evidence introduced at trial reflected that on April 20, 2023, at approximately 2:00 a.m., Edwards' mother, Patricia, and his brother Charles were both in the first-floor living room of Patricia's home at 561 Prospect. At that time, Charles and Patricia heard a noise and realized that Edwards had entered the screened-in front porch of the house. Edwards then cracked open the front door leading from the screened porch to the living room and spoke to his mother through the cracked door. Edwards asked for a phone charger, his mother refused his request, and Edwards left the premises.

**{¶51}** On appeal, Edwards takes issue only with the evidence presented in support of the required element that his trespass took place in a separately secured portion of the occupied structure, to-wit: the screened-in front porch of his mother's residence. Edwards argues that because neither his mother or brother actually saw him inside of the screened porch, but were only relying on what they could hear, the evidence proved only that he was somewhere near the home and that he could have been on the exterior stairs of the screened porch without actually having entered the porch. We disagree.

{¶52} At trial, Charles and Patricia testified that Edwards came over to the house that first time while Charles and his mother were resting in the living room. The house has an enclosed porch on the front of it, which is accessed from the outside through a screen door. Charles testified that he heard a noise and then could hear Edwards' voice coming from the screened-in porch. Charles testified that Edwards then cracked open the wooden door that leads from the screened porch into the living room, and that Edwards then spoke to his mother through the cracked open front door, which clearly placed Edwards inside of the screened-in porch. Patricia also testified that Edwards cracked open the door to the living room from the porch and spoke to her through that opened door. That, again, placed Edwards in the screened-in porch, not outside of it. The testimony of Charles and Patricia, along with that of Patrolman Bagley who responded afterwards, also served to establish that damage had occurred to the exterior door of the screened porch, where a screen "window" had been pushed in. Causing such damage would have provided Edwards with a means to reach inside and open the latched exterior door to the porch, which further corroborates the fact that Edwards actually entered the screened porch area, as opposed to just standing outside of the porch on the front exterior steps.

{¶53} The above evidence, viewed as a whole, more than adequately established that Edwards trespassed in the screened-in porch area, particularly in the absence of any evidence to the contrary. After reviewing the entire record, weighing

the evidence, and considering the credibility of the witnesses, we are not persuaded that the jury lost its way and created such a miscarriage of justice that Edwards' conviction on the Burglary charged in Count 1 must be reversed.

**{¶54}** The fourth assignment of error is overruled.

*Conclusion*

**{¶55}** Having found no error prejudicial to the defendant-appellant in the particulars assigned and argued, the judgment of conviction and sentence entered in the Allen County Court of Common Pleas is affirmed.

*Judgment affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlm**